756 F.2d 1322
 1 Fed.R.Serv.3d 1602, 17 Fed. R. Evid. Serv. 928
 Larry HALE and Linda Hale, Appellees,
v.
FIRESTONE TIRE & RUBBER COMPANY, Appellant.
The Budd Company.
Larry HALE and Linda Hale, Appellees,
v.
FIRESTONE TIRE & RUBBER COMPANY, The Budd Company, Appellant.
 Nos. 83-2406, 83-2407.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 16, 1984.
Decided March 13, 1985.
 
 William H. Sanders, Kansas City, Mo., for Firestone.
 Thomas J. Wheatley, Kansas City, Mo., for Budd.
 John Risjord, Kansas City, Mo., for appellees.
 Before ROSS, BENNETT* and McMILLIAN, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Firestone Tire & Rubber Company (Firestone) and the Budd Co. (Budd) appeal[1] from a final judgment entered in the District Court for the Western District of Missouri upon a jury verdict in a products liability action brought by appellees Larry Hale and his wife, Linda Hale. Appellees were awarded $4,290,000 in actual and punitive damages from Firestone and Budd. For reversal Firestone and Budd argue that the district court erred in (1) denying their motion for disqualification and their motion for mistrial because of the judge's personal bias and prejudice, (2) refusing to instruct on contributory fault, (3) admitting evidence of other truck wheel accidents, (4) admitting into evidence a motion picture depicting a separation of a truck wheel different from the wheel in this case, (5) admitting into evidence injury photographs of Larry Hale, (6) permitting inflammatory references to the RH5? rim, (7) permitting references to the Firestone 500 steel belted radial tire, (8) disregarding the pretrial orders of Judge Collinson[2] and permitting appellees to comment on matters stricken from the case, (9) sustaining the punitive damages award to Linda Hale for loss of consortium, (10) permitting appellee to cite material outside the relevant time frame in support of the punitive damages claim, and (11) refusing to grant a new trial because of the jury's excessive award of damages. Budd further argues that the district court erred in (1) admitting third-party documents into evidence and refusing to give limiting instructions as to their use and (2) denying its motion for a directed verdict on the punitive damages issue. Firestone further argues that the evidence was insufficient to sustain the punitive damages award. For the reasons discussed below, we reverse and remand.
 
 
 2
 On October 4, 1977, Larry Hale was injured when part of the assembly of a RH5? truck rim separated under pressure and struck him. The accident occurred while Hale was inflating a tubed tire mounted on the outer dual wheel on his 1968 Ford F-600 ten-wheeler[3] truck.
 
 
 3
 At the time of the accident, Hale, thirty-one years old and a college graduate, was involved in several enterprises, including the ownership and operation of a trucking company that hauled commodities and the operation of garages that repaired tires. Hale and his companies operated a fleet of approximately twenty vehicles.
 
 
 4
 On the day of the accident, Hale and his friend, Eddie Leavall, drove Hale's 1968 Ford F-600 truck and a pick-up truck with an attached gooseneck trailer from Hale's place of business in Sheldon, Missouri, to Berryville, Arkansas, to pick up a load of fire-damaged fertilizer. Hale planned to sell the fertilizer to Jack McCormick, a farmer near Reeds, Missouri. The overall trip was approximately 250 miles. At Berryville Hale and Leavall loaded the trucks with fertilizer and headed for the McCormick farm. En route Hale noticed that one of the tires on the Ford truck was leaking air. After an attendant at a service station stated that he was unable to repair the tire, Hale added air to the tire.
 
 
 5
 When Hale arrived after dark at the McCormick farm, McCormick was not home. Hale received permission to park the vehicles in a quonset hut overnight. He first drove the pick-up truck into the hut and unhitched the trailer. Hale testified that before driving the Ford truck into the hut, he noticed that the tire was low but was unable to repair the tire because he had no tools. Instead, he borrowed McCormick's portable air compressor and added air to the tire while it was still mounted on the truck. The rim separated and Hale was struck and injured.
 
 
 6
 Hale sustained serious injuries to his face and right hand and minor injuries to his leg. He was hospitalized for four to five days following the accident and underwent facial surgery. He was hospitalized again in January 1978 for two or three days for surgery on his eyelids. His total medical expenses to date are $3,471.80. Hale complains of various continuing problems, e.g., pain, sinus headaches, tearing, altered facial appearance, and a reluctance to be around other people because of the appearance of his face. Firestone's and Budd's medical experts testified that surgery, costing about $10,000, would alleviate Hale's claimed disparity in appearance and other medical complaints. Hale has passed the FAA's pilot's physical since the accident, and Budd and Firestone argue that this is evidence that Hale suffered no permanent disability from the accident. Further, Budd and Firestone argue that Hale began work as a real estate broker in 1980 and that this indicates he has not avoided contact with people.
 
 
 7
 Hale returned to work approximately ten days after the accident and claims no loss of earnings.
 
 
 8
 The RH5? rim in this case consists of three parts: a rim base, a side ring, and a disc. Firestone manufactured the rim base and side ring. Budd manufactured the disc, attached the disc to the Firestone rim, and sold the rim/disc combination. The date stamp on the rim indicates that the rim was manufactured in 1956. The rim and tire, when assembled and inflated, form a pressure vessel which mounts on a truck axle by means of a disc welded or riveted to the rim base.
 
 
 9
 The RH5? rim was developed during the 1940s for use primarily on medium size trucks. The RH5? rim was produced by Firestone, Budd, Kelsey-Hayes, and Goodyear. In 1957 Firestone obtained a patent on a single-piece rim, and in the 1960s Firestone began phasing out the RH5? rim.
 
 
 10
 Various governmental agencies have conducted investigations of the RH5? rim. In 1969, the Utah Industrial Commission considered a ban on the RH5? rim. Following an investigation and a hearing, the Commission decided not to ban the rim and instead issued an order making employers responsible for instructing their employees in and enforcing compliance with appropriate servicing procedures. The Commission directed that a rim is to be demounted, inspected, and reassembled prior to inflating when a tire is flat or severely underinflated. The Commission found no defect.
 
 
 11
 In 1969 the predecessor of the National Highway Traffic Safety Administration (NHTSA) began an investigation of the rim. In June 1973 the NHTSA issued a public advisory alerting truck drivers and truck service personnel to the dangers of misassembly of the RH5? rim. The advisory stated: "Never inflate a tire that has gone flat on the road until after double checking the side ring for mispositioning and/or damage." Shortly thereafter, the NHTSA issued another public advisory regarding the dangers of all multi-piece rims. In 1974 the NHTSA issued a public finding that the RH5? rim had no safety related defects.
 
 
 12
 In 1978, in response to a petition filed by the Insurance Institute for Highway Safety, an insurance industry trade association, the NHTSA opened two proceedings concerning multi-piece rims, a preliminary engineering analysis and a rule-making proceeding. Other than requests for information, the NHTSA has taken no action in either proceeding. The rule-making proceeding was terminated in February 1982; no performance standards were issued.
 
 
 13
 In October 1979, Lynn Bradford, the acting director of NHTSA's Office of Defects Investigation, invited Firestone and other manufacturers of the RH5? rim to voluntarily recall the RH5? rim because the accident rate for RH5? rims "point[s] toward an inherent safety defect in the rim." Firestone declined the invitation because the NHTSA had not found a defect.
 
 
 14
 In 1978 Larry Hale and Linda Hale brought suit against Firestone on a strict liability (defective product) theory. Larry Hale sought recovery for the injuries he had received and Linda Hale sought recovery for loss of consortium. Budd and the Kelsey-Hayes Co. were added as defendants in July 1982.
 
 
 15
 In 1979 this case was consolidated with other actions alleging injuries caused by various multi-piece rim tires. Extensive national discovery was conducted on several common issues, particularly Hale's allegations of "political slush funds" used to influence government investigations, the withholding of information from and the provision of false information to governmental agencies, and a conspiracy to prevent warning labels on RH5? rims. After reviewing the results of the discovery, Judge Collinson determined that these allegations were "factually baseless" and granted defendants' motions to strike the allegations from the various actions.
 
 
 16
 After fifteen days of trial, the jury returned a general verdict against Firestone and Budd and for the Kelsey-Hayes Co. Larry Hale was awarded $2,800,000 punitive damages from Firestone and $700,000 punitive damages from Budd and $350,000 actual damages from Firestone and Budd. Linda Hale was awarded $320,000 punitive damages from Firestone and $80,000 punitive damages from Budd and $40,000 actual damages from Firestone and Budd. This appeal followed.I. Bias and Prejudice of the District Judge
 
 
 17
 Firestone and Budd argue that the district court erred in denying their motion for disqualification pursuant to 28 U.S.C. Sec. 455 (1982) and their motion for mistrial because of the district judge's personal bias and prejudice. Firestone and Budd allege numerous instances of bias and prejudice that fall within three general categories: (1) the judge's questioning of defense witnesses, (2) the judge's rulings, primarily on evidentiary matters, and (3) the judge's comments during the pretrial conference and during the trial.
 
 
 18
 Firestone and Budd first argue that the district judge should have disqualified himself under 28 U.S.C. Sec. 455.[4] Section 455(a) requires a federal judge to disqualify himself or herself "in any proceeding in which his [or her] impartiality might reasonably be questioned." The judge must disqualify himself or herself if a reasonable person would have a factual basis to doubt the impartiality of the judge. United States v. Outler, 659 F.2d 1306, 1312 (5th Cir.1981), cert. denied, 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 665 (1982); Blizard v. Frechette, 601 F.2d 1217, 1220 (1st Cir.1979); United States v. Cepeda Penes, 577 F.2d 754, 757 (1st Cir.1978).
 
 
 19
 Section 455(b) requires a federal judge to disqualify himself or herself if the judge has a "personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts," has been related to or connected with the case, the parties, or their attorneys, or has a "financial interest in the subject matter in controversy or in a party to the proceeding, or any interest that could be substantially affected by the outcome of the proceeding." The personal bias and prejudice contemplated must be extrajudicial. United States v. Outler, 659 F.2d at 1312. Facts learned by a judge in his judicial capacity cannot be the basis for disqualification. United States v. Story, 716 F.2d 1088, 1091 (6th Cir.1983); United States v. Patrick, 542 F.2d 381, 390 (7th Cir.1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); United States v. Bernstein, 533 F.2d 775, 785 (2d Cir.), cert. denied, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). Further, "adverse evidentiary rulings do not, by themselves, demonstrate bias." Blizard v. Frechette, 601 F.2d at 1220, citing United States v. Schwartz, 535 F.2d 160, 165 (2d Cir.1976), cert. denied, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581 (1977).
 
 
 20
 The district judge did not abuse his discretion by refusing to disqualify himself under Sec. 455. Firestone and Budd do not allege that the judge or his spouse or minor child living in his household had any financial interest in this case, or that the judge had been connected with any parties or their attorneys, or that the judge had any extrajudicial knowledge or bias toward them. Further, Firestone and Budd do not allege facts which would cause a reasonable person to doubt the impartiality of the judge in this case.
 
 
 21
 Firestone and Budd next argue that the district judge should have granted a mistrial because of his improper comments, rulings and questioning of witnesses. We consider first the judge's questioning of witnesses.
 
 
 22
 The "behavior and bearing of a judge during a jury trial must be such that the entire trial will be conducted in a general atmosphere of impartiality." United States v. Cassiagnol, 420 F.2d 868, 878 (4th Cir.), cert. denied, 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed.2d 654 (1970). However, Fed.R.Evid. 614(b) provides that the court may interrogate witnesses, whether called by itself or by a party. "[A] judge is entitled to propound questions pertinent to a confused factual issue which requires clarification. He [or she] may also intercede ... to draw more information from reluctant witnesses or experts who are inarticulate or less than candid." United States v. Cassiagnol, 420 F.2d at 879.
 
 
 23
 Firestone and Budd argue that the district judge assumed the role of advocate for appellees by his extensive questioning of Dr. Gail McCarthy, Firestone's and Budd's expert witness. We do not agree. We note that this trial lasted fifteen days and the trial transcript covers approximately 4,000 pages. Dr. McCarthy's testimony covers 140 pages and the court's questioning covers only 9 pages. The court's questioning of Dr. McCarthy in the context of the lengthy trial was not extensive and had as its purpose the clarification of factual issues. Jaeger v. Henningson, Durham & Richardson, Inc., 714 F.2d 773, 777 (8th Cir.1983); United States v. Jackson, 696 F.2d 578, 593-94 (8th Cir.1982), cert. denied, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed. 952 (1983). A careful review of the transcript convinces us that the district judge did not abuse his discretion in the questioning of the witness.
 
 
 24
 Firestone and Budd also argue that the district judge's comments were prejudicial and reflected that the district judge had determined from the beginning of the case that the RH5? rim was defective. We agree that the district judge's comments unequivocally indicate that he believed the rim was defective, but we do not agree that these comments denied Firestone and Budd a fair trial. The comments, with the exception of one, were made out of the presence of the jury and therefore did not affect the jury. Moreover, the district judge had reviewed much of the parties' evidence during the pretrial conference and heard the evidence throughout the trial. Any opinion expressed on the merits of the case was based on this evidence and the judge's participation in the trial; there was no extrajudicial source of bias. Grinnell v. United States, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); Johnston v. Citizens Bank & Trust Co., 659 F.2d 865, 869 (8th Cir.1981); United States v. Azhocar, 581 F.2d 735, 739 (9th Cir.1978), cert. denied, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979).
 
 
 25
 The one comment made by the district judge before the jury--"Well, I have put air in a lot of tires, but I never had one blow up on me"--was improper. "While remarks made by a district judge within the hearing of the jury are often necessary, the judge should take care not to give the impression that he or she prefers one litigant over another." Newman v. A.E. Staley Manufacturing Co., 648 F.2d 330, 334 (5th Cir.1981). "However, a few improper comments are not necessarily enough to require reversal." United States v. Singer, 710 F.2d 431, 436 (8th Cir.1983); United States v. Cardall, 550 F.2d 604, 606 (10th Cir.1976), cert. denied, 434 U.S. 841, 98 S.Ct. 137, 54 L.Ed.2d 105 (1977); United States v. Porter, 441 F.2d 1204, 1214-16 (8th Cir.), cert. denied, 404 U.S. 911, 92 S.Ct. 238, 30 L.Ed.2d 184 (1971). Each case must turn on its own facts. The single comment in this case is not sufficient for reversal. The comment was a minor incident in a lengthy trial and is not the type of egregious conduct that alone would require reversal. United States v. Singer, 710 F.2d at 436-37 (the judge's excessive questioning because of the inexperience of the prosecutor denied defendant a fair trial); Newman v. A.E. Staley Manufacturing Co., 648 F.2d at 336 (judge's repeated questions and comments before the jury could have influenced the jury); Pollard v. Fennel, 400 F.2d 421, 424-26 (4th Cir.1968) (judge's excessive interrogations, leading questions, comments, and vigorous presentation of plaintiff's demonstrative evidence denied defendant a fair trial); Myers v. George, 271 F.2d 168 (8th Cir.1959) (judge belittled and ridiculed witnesses).
 
 
 26
 Firestone and Budd also argue that certain of the district judge's rulings reflected his personal prejudice and bias. There is no merit to these arguments. Adverse rulings alone do not constitute personal bias and prejudice. Berger v. United States, 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921) (disqualification under Sec. 21, now 28 U.S.C. Sec. 144); Doss v. United States, 659 F.2d 863, 864 (8th Cir.1981); Blizard v. Frechette, 601 F.2d at 1220; United States v. Azhocar, 581 F.2d at 739. The specific rulings which are alleged to be erroneous are reviewed below.
 
 
 27
 We have carefully reviewed the transcript and find that the judge's overall conduct was not oppressive or hostile. With the single exception noted above, the district judge did not communicate his opinions to the jury. Further, the judge carefully instructed the jury at the conclusion of the trial that his questioning was to "bring out facts not then fully covered in the testimony, that his questioning did not indicate that he held an opinion on the matters to which [his] questions may [be] related," and that the jury could "disregard all comments of the court in arriving at [its] findings as to the facts." The district court did not abuse its discretion in denying the motion for a mistrial.
 
 
 28
 Although we hold that the district court's comments and remarks do not require reversal because all but one were made out of the presence of the jury, we note that the district court's comments which reflected its view that the rim was defective and that appellees should prevail were unnecessary to the proceedings. We further note that judicial restraint and decorum would be better served and advanced if district judges would refrain from making such comments. Courts must not only be fair and impartial in proceedings before them but must also avoid those actions which appear to be partial and unfair. Comments concerning the court's view of the merits of a case should generally be avoided.
 
 II. Instruction on Contributory Fault
 
 29
 Firestone and Budd argue that the district court erred in refusing to give an instruction on contributory fault. They argue that there was ample circumstantial evidence that Hale knowingly and voluntarily exposed himself to the danger of inflating a truck tire which was underinflated or flat.
 
 
 30
 Missouri recognizes contributory fault as an affirmative defense to strict liability. To be charged with contributory fault, however, the plaintiff must know the facts which create the danger and comprehend and appreciate the danger itself. Collins v. B.F. Goodrich Co., 558 F.2d 908, 911-12 (8th Cir.1977) (Missouri law); Keener v. Dayton Electric Manufacturing Co., 445 S.W.2d 362, 364 (Mo.1969) (tire rim case). There must be evidence that the danger is open and obvious and that plaintiff voluntarily and unreasonably encountered a known risk. Haines v. Powermatic Houdaille Inc., 661 F.2d 94, 96 (8th Cir.1981). The plaintiff, however, need not know of the exact design defect but only of the risk to the user. Ensor v. Hodgeson, 615 S.W.2d 519, 525 (Mo.Ct.App.1981).
 
 
 31
 We hold that the district court committed reversible error in refusing to give an instruction on contributory fault. Where there is evidence, direct or circumstantial, to support a party's theory of a case, he is entitled to have the jury charged regarding the claim or defense. Strudl v. American Family Mutual Insurance Co., 536 F.2d 242, 246 (8th Cir.1976). There was substantial circumstantial evidence from which a jury could infer that Hale knew of the danger and voluntarily encountered a known risk: (1) Hale had driven trucks with multi-piece rims for about twenty years; (2) he owned and operated a large truck stop with a four-bay garage; (3) he was president of a trucking company with a maintenance shop; (4) he had purchased a safety cage for use by his maintenance staff in inflating truck wheels; (5) public advisories had been issued by NHTSA concerning the dangers of multi-piece rims; and (6) there was testimony that it was common knowledge in the trucking industry at the time of the accident that one should not inflate a flat truck tire mounted on a truck.III. Evidence of Other Truck Wheel Accidents
 
 
 32
 Firestone and Budd argue that the district court erred in permitting appellees to present evidence of other truck rim accidents involving RH5? wheels without a showing that the RH5? wheel in those accidents was in "substantially the same condition" as the wheel in the present case and that the other accidents occurred under circumstances substantially similar to the circumstances in this case. The district court over objection permitted appellees to present evidence of accidents involving explosive separation of RH5? rims, with no restriction as to the circumstances or the dates of the accidents.
 
 
 33
 Appellees introduced and read the names and dates of accidents from a list (Plaintiffs' Ex. 229) purporting to represent 210 accidents involving the RH5? rim over a twenty-seven year period ending December 1982. This list was prepared by appellees from interrogatory responses of Firestone and other defendants. Appellees also read the deposition and a letter incorporated therein of Paul Hykes, an engineer and former employee of Budd. This deposition was taken in a 1978 case in which Hykes appeared as an expert witness against Firestone. The letter was written by Hykes in 1969. The deposition and letter recounted three accidents involving RH5? tire rims; at least eight persons were reportedly killed in these accidents. Appellees also introduced a computer printout of rim accident claims (Plaintiffs' Ex. 227).
 
 
 34
 Appellees argue that the other accident evidence was relevant and admissible to show defect because it shows the history of the product and demonstrates that an explosive separation of the RH5? rim occurs under varying conditions. We do not agree. Evidence of prior accidents is admissible only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar. Peterson v. Auto Wash Manufacturing & Supply Co., 676 F.2d 949, 953 (8th Cir.1982); McKinnon v. Skil Corp., 638 F.2d 270, 277 (1st Cir.1981); Julander v. Ford Motor Co., 488 F.2d 839, 846-47 (10th Cir.1973). The district court erred in admitting evidence of all RH5? explosive separation accidents and in shifting to Firestone and Budd the burden of showing dissimilarity after the evidence was admitted. Appellees admit that the circumstances of the accidents differ; the only similar circumstance indicated in the record is the explosive separation of the wheel rim. This is an insufficient showing of similarity.
 
 
 35
 We cannot say that admission of this evidence was merely cumulative or harmless. The evidence of numerous other accidents, some of them involving fatalities, was compelling and was specifically requested by the jury during its deliberation.
 
 IV. IIHS Motion Picture
 
 36
 Firestone and Budd argue that the district court abused its discretion in permitting appellees to show the jury a motion picture film depicting a tire rim accident. This film was prepared by the Insurance Institute for Highway Safety to support its 1978 petition to NHTSA to ban all multi-piece truck wheels. The film depicts a man inflating a tire, an explosive separation of the tire, and a mannequin struck by the exploding parts. The life-like mannequin is hurled into the air by the explosion and "killed."[5] Appellants argue that (1) the experiment depicted in the film did not occur under circumstances substantially the same as the accident in this case, (2) the evidence is not relevant because the amount of force or its destructive power is not an issue, (3) the film is prejudicial and without probative value, and (4) other non-inflammatory motion picture films were available to show force.
 
 
 37
 Appellees argue that the film was properly admitted to demonstrate the force of the explosive separation of a RH5? rim. Appellees concede, however, that there were differences between the experiment depicted in the film and the accident in this case: (1) the rim in the film was not a RH5? rim, (2) the manufacturer of the rim in the film was not shown to be Firestone and was unknown, (3) the rim in the film had been substantially altered (70% of the rim gutter hook, the latching surfaces, was machined away to induce a separation), (4) one of the tires in the film was inflated to 80-90 psi (the tire in the present case was inflated to no more than 55 psi), (5) the rim in the film had a split ring (the RH5? rim has a continuous ring), and (6) the tire in the film had been removed from the truck and was lying on the ground (the tire in this case was mounted on Hale's truck).
 
 
 38
 "Evidence of experimental tests is not admissible unless a foundational showing is made that the tests were conducted under conditions substantially similar to actual conditions. The admissibility of such evidence rests largely in the discretion of the trial judge and his decision will not be overturned absent a clear showing of an abuse of discretion." Collins v. B.F. Goodrich Co., 558 F.2d at 910; See Haynes v. American Motors Corp., 691 F.2d 1268, 1270-71 (8th Cir.1982).
 
 
 39
 We hold that the district court abused its discretion in permitting the film to be shown when the conditions of the experiment were admittedly substantially different from the conditions of the accident in this case. The admission of the film graphically depicting a dissimilar explosive accident and its severe consequences cannot be viewed as harmless error. We cannot say with certainty that the jury's decision would have been the same absent this evidence. See Gladhill v. General Motors Corp., 743 F.2d 1049, 1051-52 (4th Cir.1984).
 
 V. Photographs of Hale's Injuries
 
 40
 Firestone and Budd argue that the district court erred in admitting color photographs of Hale's injuries immediately prior to surgery. Appellees were permitted to offer seven 9" X 11" size photographs, to present the same photographs on a 3' X 4' screen during a videotaped deposition of appellees' medical expert, and to display them again during closing arguments. Firestone and Budd argue that the photographs were not probative of any contested issue and were calculated to inflame the jury. Appellees argue that the photos show the extent of Hale's injuries, an issue which was disputed.
 
 
 41
 The admission of photographs is a matter within the sound discretion of the district court. Roberts v. Hollocher, 664 F.2d 200, 204 (8th Cir.1981); Giblin v. United States, 523 F.2d 42, 44 (8th Cir.1975), cert. denied, 424 U.S. 971, 96 S.Ct. 1470, 47 L.Ed.2d 739 (1976); United States v. Delay, 500 F.2d 1360, 1366 (8th Cir.1974). The test to be applied is whether the prejudicial effect outweighs the probative value of the evidence. Giblin v. United States, 523 F.2d at 44. We hold that the district court did not abuse its discretion in admitting the photographs. The extent of Hale's physical injuries was an issue in this case.
 
 VI. Inflammatory References to the Rim
 
 42
 Firestone argues that appellees were permitted to improperly refer to the rim as "widow maker," "man killer," "killer wheel," and "bone breaker," and that these terms represented conclusory opinions, were prejudicial and inflammatory, and deprived Firestone of a fair trial. Firestone's motion in limine to prevent the use of these terms was denied. Firestone renewed its objection at trial but on different grounds--that the phrases were hearsay.
 
 
 43
 A motion in limine does not preserve error for appellate review. A party whose motion in limine has been overruled must object when the error the party sought to prevent with the motion is about to occur at trial. Starr v. Hacker Co., 688 F.2d 78, 81 (8th Cir.1982); Northwestern Flyers, Inc. v. Olson Bros. Mfg. Co., 679 F.2d 1264, 1275 n. 27 (8th Cir.1982), citing Collins v. Wayne Corp., 621 F.2d 777, 784 (5th Cir.1980). An objection at trial on one ground will not enable the objecting party to rely on appeal on other grounds that were not stated in the trial objection. E.g., Magill v. Westinghouse Electric Corp., 464 F.2d 294, 297 (3d Cir.1972); Markel Service Inc. v. National Farm Lines, 426 F.2d 1123, 1128 (10th Cir.1970).
 
 
 44
 Firestone has not preserved this point for appellate review. The motion in limine was renewed at trial but on different grounds. Firestone objected at trial on the basis of hearsay and now appeals on the basis that the terms were conclusory and inflammatory.
 
 
 45
 Because this case is remanded for a new trial, appellees will be well advised to consider the allegations and arguments made by Firestone and Budd in their brief against the use of terms such as "widow maker," "man killer," "killer wheel," etc.
 
 
 46
 VII. Prejudicial References to Firestone's Conduct Regarding the Firestone 500 Steel Belted Radial Tire
 
 
 47
 Firestone argues that the district court erred in permitting appellees to admit into evidence a letter of Lynn Bradford, acting director of the Office of Defects Investigation of NHTSA. Bradford, pressing Firestone for a response to an earlier letter concerning the RH5? rim, wrote: "I had hoped that Firestone would be more responsive on this matter and that we would not be subject to the delaying tactics utilized in the steel belted radial tire case." The Firestone 500 Steel Belted Radial tire was the subject of a national recall. Firestone argues that (1) the present case did not involve the Firestone 500 tire or any product akin to it and (2) the evidence was presented only to lend credibility to the suggestion that Firestone had suppressed information concerning the Firestone 500 and to suggest that the RH5? rim, like the Firestone 500 tire, was also defective.
 
 
 48
 The admissibility or exclusion of evidence lies within the sound discretion of the trial judge, and the district court's decision will not be overturned unless there is an abuse of discretion. Bond v. Local Union 823 International Brotherhood of Teamsters, 521 F.2d 5, 10 (8th Cir.1975); General Dynamics Corp. v. Selb Manufacturing Co., 481 F.2d 1204, 1217 (8th Cir.1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). The Firestone 500 steel belted tire is not related to the present case, and the reference to the 500 is prejudicial and is probative of no issue in this case. We hold that the district court abused its discretion in admitting this evidence. The evidence should be excluded on remand.
 
 
 49
 VIII. Third Party Documents and Limiting Instructions
 
 
 50
 Budd argues that the district court erred in refusing to give limiting instructions as to the proper use of certain documents. The documents were made available during national discovery and belonged to Firestone and General Motors. Budd argues that the letters and internal memos were produced, authored, or received by parties other than Budd. Budd argues that the refusal to give limiting instructions was reversible error because the documents were admitted to show notice of the defect, and the jury, without limiting instructions, could have improperly considered the documents against Budd as evidence of wanton conduct and the basis for punitive damages. Appellees do not contend that Budd had knowledge of the documents but rather argue that the documents were offered to prove defect and that knowledge by the manufacturer of the defect is not required in a strict liability case.
 
 
 51
 "Once evidence admissible for one purpose but inadmissible for another is admitted, the trial court cannot refuse a requested limiting instruction." Chematron Corp. v. Business Funds, Inc., 682 F.2d 1149, 1185 (5th Cir.), cert. denied, 460 U.S. 1013, 103 S.Ct. 1254, 75 L.Ed.2d 483 (1982); see Werner v. Upjohn Co., 628 F.2d 848, 854 (4th Cir.1980), cert. denied, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981). The evidence was admissible to show defect as to Budd but was not admissible to show notice to Budd or knowledge by Budd. The district court committed reversible error in refusing to give limiting instructions. This evidence was argued to the jury and may have affected the jury in its decision to award punitive damages from Budd. On remand the district court should caution the jury about the limited admissibility of these documents.
 
 IX. Pre-Trial Order
 
 52
 Firestone and Budd argue that the district court erred in permitting appellees to present evidence about three allegations which Judge Collinson by a pretrial order had stricken as "factually baseless." This pretrial order was issued after three years of discovery. The final pretrial order of October 8, 1982, stated:
 
 
 53
 This Court wishes to emphasize that the parties were given every opportunity to present evidence to this Court. No evidence was rejected on the grounds that it may have been inadmissible in fact. These motions were invited by this Court in those instances in which consolidated Common Issue discovery conclusively demonstrated that the allegations were factually baseless.
 
 
 54
 The removal or exclusion of a Common Issue or any part thereof is intended, when applicable, to strike from the individual complaints in these actions those paragraphs which reflect, recite or relate to the subject matter of such Common Issue. To that extent, the referenced Orders below should supplement the pleadings to the individual action.
 
 
 55
 The three allegations which were stricken as to Firestone were: (1) withholding or misrepresenting information to various governmental regulatory agencies, (2) conspiracy to not place warning labels on the RH5? rim, and (3) use of a political slush fund to influence investigations of the rim. Judge Collinson granted summary judgment in favor of Budd on these three issues.
 
 
 56
 The district court did not formally modify the pretrial motion but indicated that it did not feel bound by Judge Collinson's order and admitted evidence which was excluded by the pretrial order.
 
 
 57
 Under Fed.R.Civ.P. 16, the pretrial order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Lirett v. Popich Bros. Water Transport, Inc., 660 F.2d 142, 144 (5th Cir.1981) (citations omitted); United States v. First National Bank, 652 F.2d 882, 887 (9th Cir.1981). "The pretrial order measures the dimensions of a lawsuit." Seneca Nursing Home v. Secretary of Social & Rehabilitation Services of Kansas, 604 F.2d 1309, 1313, 1314 (10th Cir.1979) (citations omitted). Accordingly, a party may not offer evidence or advance theories during trial which violate the terms of a pretrial order. United States v. First National Bank, 652 F.2d at 886. A pretrial order will be modified only if there is no substantial injury or prejudice to the opponent. Id. at 887; McFadden v. Sanchez, 710 F.2d 907, 911 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983).
 
 
 58
 The district court committed reversible error in admitting evidence which was excluded by the pretrial order. The district court made no finding that manifest injustice would occur if the pretrial order was not modified, Labbee v. Roadway Expess, Inc., 469 F.2d 169, 172 (8th Cir.1972), or that Firestone and Budd were not substantially prejudiced by the modification. Although the district court may modify the pretrial orders of another judge, the district court may not ignore the orders or act contrary to them.
 
 
 59
 X. Closing Argument on Punitive Damages Claim
 
 
 60
 Firestone and Budd argue that appellees improperly referred to Firestone's and Budd's post-1956 knowledge of the alleged rim defect in support of appellees' punitive damages claim based on a strict liability failure to warn. Firestone and Budd argue that the only relevant evidence is evidence of their knowledge before 1956, when the rim was sold. Appellees argue that the post-1956 evidence was properly argued and considered to show defect. Further, appellees argue that evidence of appellees' post-sale knowledge of a defect should be admissible to show knowledge and as a basis for punitive damages.
 
 
 61
 Punitive damages are recoverable in Missouri in an action for strict liability for failure to warn only if "at the time defendant sold the [product], defendant knew of the [danger] ... [and] defendant thereby showed complete indifference to or conscious disregard for the safety of others." MAI 10.04 (1983); see Racer v. Utterman, 629 S.W.2d 387, 395-97 (Mo.Ct.App.1981). Evidence of post-sale knowledge of a defect may not be the basis for punitive damages based on strict liability for failure to warn. The district court abused its discretion in permitting appellees to argue this evidence in support of their claim for punitive damages.
 
 
 62
 XI. Sufficiency of Evidence on Punitive Damages Claim Against Firestone
 
 
 63
 Firestone argues that the evidence was insufficient to sustain an award of punitive damages because there was no evidence that Firestone knew the RH5? rim was dangerous at the time the rim was put into commerce. Firestone argues that the rim was manufactured in 1956 and presumably was placed in commerce shortly thereafter absent any evidence to the contrary. Therefore Firestone argues that punitive damages may only be awarded if Firestone knew in 1956 that the RH5? rim was dangerous and failed to warn of the danger. Firestone concedes that there was some evidence from which knowledge of the defect could be inferred but argues that the evidence was not substantial.
 
 
 64
 "Acts justifying imposition of punitive damages must be willful, wanton, malicious, or so reckless as to be in utter disregard of consequences. There must be some element of wantoness or bad motive." Vanskike v. ACF Industries, Inc., 665 F.2d 188, 208-09 (8th Cir.1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982), citing McClellan v. Highland Sales & Investment Co., 484 S.W.2d 239, 242 (Mo.1972). We hold that there was evidence from which the jury could infer that Firestone knew the rim was dangerous. The following evidence was before the jury: (1) memoranda concerning a 1950 report by Studebaker of three rim accidents involving the same truck owner; (2) a 1952 Firestone memorandum requesting a list of complaints regarding the RH5? rim including those complaints involving explosive separations; (3) a 1953 Firestone training film which demonstrates the proper assembly method for the RH5? rim and which acknowledges that one cannot see if a rim is properly assembled; and (4) a 1953 patent application by a Firestone engineer which acknowledges the "hazards and dangers ... in mounting and demounting heavy truck tires ... [and a] locking ring to fly off into the face or body of the user."
 
 
 65
 XII. Budd's Motion for Directed Verdict on the Punitive Damages Claim
 
 
 66
 Budd argues that the district court erred in denying its motion for a directed verdict and for judgment notwithstanding the verdict on the punitive damages issue. Budd argues that there was no evidence that Budd knew or should have known about any defects at the time the rim was sold.
 
 
 67
 The standard for granting a motion for a directed verdict is the same under federal and Missouri law. Savage v. Christian Hospital Northwest, 543 F.2d 44, 46 (8th Cir.1976). In considering a motion for a directed verdict, the trial judge must view all of the evidence in the light most favorable to the party opposing the motion. Farner v. Paccar, Inc., 562 F.2d 518, 522 (8th Cir.1977); Kennedy v. United States Construction Co., 545 F.2d 81, 82 (8th Cir.1976); Shofler v. Jordan, 284 S.W.2d 612, 613 (Mo.Ct.App.1955). If the evidence when viewed in this light is such that reasonable persons could not differ in finding that the movant should prevail, the court should grant the motion. Moore v. Credit Information Corp., 673 F.2d 208, 210 (8th Cir.1982); Farner v. Paccar, Inc., 562 F.2d at 522.
 
 
 68
 The district court did not err in denying Budd's motion for a directed verdict. Paul Hykes, Budd's chief engineer from 1950 to 1969, indicated in a 1969 letter and in a 1978 deposition that he knew of the danger of the RH5? rim by 1953. By 1981, Paul Hykes had changed his opinion of the dangerousness of the RH5? rim and this was reflected in his 1981 deposition. The factual issue of Budd's knowledge of the defect, however, was a jury question; the jury had to determine the credibility of Hykes, the truthfulness of his conflicting statements, and whether Budd had knowledge of the defect prior to 1956.
 
 XIII. Punitive Damages for Loss of Consortium
 
 69
 Firestone and Budd argue that the district court erred in denying their motion for a directed verdict on Linda Hale's claim for loss of consortium. Firestone and Budd argue that Linda Hale's claim for consortium is derivative and that recovery in such actions is intended only as compensation.
 
 
 70
 Although there is no Missouri case on point, a majority of those jurisdictions which have considered this issue have rejected awards of punitive damages for loss of consortium. The Illinois Supreme Court recently held that:
 
 
 71
 Such an additional award would not serve to punish or deter the defendant who had already been punished in the first action. Rather, it would clearly result in a double windfall to the injured party and the spouse. Further, the underlying rationale for denying punitive damages in loss of consortium suits, and the one we adopt in this case, is that the injury is "indirect" or derivative in nature and the recovery in such actions is intended only as compensation.
 
 
 72
 Hammond v. North American Asbestos Corp., 97 Ill.2d 195, 73 Ill.Dec. 350, 357, 454 N.E.2d 210, 217 (1983); see Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334, 341 (Ala.1980); Moran v. Stephens, 265 So.2d 379, 380 (Fla.Dist.Ct.App.1972); Golden v. R.L. Greene Paper Co., 44 R.I. 231, 116 A. 579 (1922); Hughey v. Ausborn, 249 S.C. 470, 154 S.E.2d 839, 843 (1967). But see Butcher v. Robertshaw Controls Co., 550 F.Supp. 692, 705-06 (D.Md.1981); Sheats v. Bowen, 318 F.Supp. 640, 648 (D.Del.1970).
 
 
 73
 We are persuaded that Missouri courts will follow these cases and will hold that punitive damages are not recoverable for loss of consortium. Therefore, the district court erred in denying Firestone's and Budd's motion for a directed verdict on Linda Hale's claim for punitive damages for loss of consortium.
 
 XIV. Excessive Damages Awards
 
 74
 Firestone and Budd argue that the punitive and actual damages awards were excessive; therefore, they are entitled to a new trial. Firestone and Budd argue that the award was the result of passion and prejudice and bears no reasonable relationship to the injuries allegedly sustained. Appellees argue that the jury deliberated about nine hours over a two-day period before reaching a verdict and that this indicates that the jury was "not swept up by any tidal wave of passion and prejudice." Further, appellees argue that the punitive damages amount to only two-tenths of one percent of Firestone's net worth and only four-tenths of one percent of Budd's net worth. We do not decide this issue because we have reversed the judgment on other grounds.
 
 
 75
 Accordingly, the judgment of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Marion T. Bennett, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation
 
 
 [1]
 This is the third appeal of this case to this court. The first, In re: Multi-Piece Rim Prods. Liab. Litig., 612 F.2d 377 (8th Cir.1980), vacated, Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), involved Firestone's attempt to disqualify appellees' counsel in this case and other cases. The second, In re: Kelsey-Hayes Co., 718 F.2d 1106 (8th Cir.1983), was a petition for writ of prohibition to prevent a General Motors engineer from identifying a documented study which concluded that the RH5? rim should be discontinued
 
 
 [2]
 Judge William Collinson of the Western District of Missouri was the original judge in the present case. Judge Collinson recused himself after taking senior status and the case was assigned to another judge in January 1983. Judge Collinson presided over the pretrial proceedings of the present case, which was consolidated with sixteen other cases in January 1979 by order of the Judicial Panel on Multidistrict Litigation and was designated Multi-Piece Rim Prods.Liab.Litig. (MDL-362). Additional cases were later added to these consolidated pretrial proceedings
 
 
 [3]
 Two wheels were mounted on the front steering axle, four on the rear drive axle, and four on the "tag" axle
 
 
 [4]
 Firestone and Budd specifically state that they are not seeking disqualification under 28 U.S.C. Sec. 144, which requires a party seeking to disqualify a judge to file a timely and sufficient affidavit setting forth the facts and reasons for the belief that bias or prejudice exists. Failure to file such an affidavit constitutes a waiver. United States v. Azhocar, 581 F.2d 735, 737-38 (9th Cir.1978), cert. denied, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed. 454 (1979); United States v. Anderson, 561 F.2d 1301, 1302-03 (9th Cir.), cert. denied, 434 U.S. 943, 98 S.Ct. 438, 54 L.Ed.2d 304 (1977). Neither Firestone nor Budd filed an affidavit
 
 
 [5]
 The tossing about of the mannequin is in slow motion and is repeated from several camera angles. There is no narration, music, or "blood" on the mannequin