Jerry McCRARY–EL, Appellant,

v.

Dennis SHAW, John Mills, and Edward
Courtney, Appellees.

No. 92–2503.

United States Court of Appeals,
Eighth Circuit.

Submitted March 19, 1993.

Decided May 6, 1993.

Neil J. Maune, Granite City, IL, argued, for appellant.

Mark H. Levison, St. Louis, MO, argued (Brian N. Brown, on the brief), for appellees.

Before BOWMAN, MORRIS SHEPPARD ARNOLD, Circuit Judges, and KYLE,* District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Appellant Jerry McCrary–El is currently serving a life sentence plus 35 years in Farmington, Missouri (FCC), for assault with intent to kill with malice aforethought, first-degree arson, and carrying a concealed weapon. He claims that correctional center employees used excessive force against him in violation of 42 U.S.C. § 1983. After a three-day trial, the Hon. David D. Noce presiding, the jury found for the officers. McCrary–El filed a motion for a new trial, which was denied, and this appeal followed.

## I.

McCrary–El was housed in the administrative segregation wing of FCC, which holds those inmates considered to be especially dangerous, violent, and aggressive. The appellees/officers were operating pursuant to standard FCC policy that requires two or more officers to be present when any cell in that housing wing is being opened. McCrary–El alleges that he was housed in a one-man cell and the officers tried to force him to take a cell-mate, which he refused to do. He claims that the officers grabbed him around the legs, arm, head, and neck and that they picked him up and slammed him onto the concrete floor of the cell, thus injuring his back, shoulders, and neck. He further asserts that appellee Courtney began punching him in the side while Mills held him in a headlock and began twisting his neck. McCrary–El states that he was placed in handcuffs and leg shackles and dragged to another cell.

The officers claim, however, that when they instructed McCrary–El to move to the back of his cell so that his cell-mate could enter, McCrary–El refused and remained in the cell doorway. They assert that McCrary–El shoved Officer Shaw as soon as the cell door was opened, and they therefore entered the cell immediately and restrained McCrary–El by established procedures. The officers assert that McCrary–El did not complain of any pain at the time, but instead cursed the officers. They argue that they used only the force necessary to restrain McCrary–El and remove him from the cell so that another inmate could take up residence with him. It is undisputed that, when the officers returned McCrary–El to his cell during the second cell movement, they wore protective gear including padding, helmets, and visors.

## II.

For his first argument, McCrary–El claims that the trial court erred by forbidding him to read Antonio Jones's deposition into evidence. He claims that Jones was in the cell next to his and witnessed the confrontation between the officers and him. McCrary–El argues that, while Jones admittedly could not see everything from his cell, he saw enough to meet the requirements of Fed.Rule of Evid. 602. The trial court ruled, however, that Jones "had an inability to testi-

* The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minneso- ta, sitting by designation.

fy about what [was] relevant and at issue in this lawsuit."

Rule 602 states, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself ..." The trial court heard Jones testify that there was a crack at the corner of his cell door that was about an inch and a half, through which he witnessed McCrary–El's assault. He also testified that he could see into the cell only until all the officers were inside. The trial court saw a diagram of the cell placement and heard Jones testify as to the space through which he could see, as well as to what he allegedly did see. After weighing the evidence, the trial court had the discretion to determine whether Jones qualified under Rule 602. Rule 602 excludes "testimony concerning matter the witness did not observe or had no opportunity to observe." *United States v. Lyon,* 567 F.2d 777 (8th Cir.1977), *cert. denied,* 435 U.S. 918, 98 S.Ct. 1476, 55 L.Ed.2d 510 (1978). We cannot say that the trial court abused its discretion in determining that no reasonable person could conclude that Jones was able to see anything of relevance. There was therefore no error in excluding his testimony.

### III.

■ McCrary–El next argues that the trial court erred in admitting into evidence a videotape that he claims was not relevant to the case because of the trial court's grant of summary judgment as to Count II of his second amended complaint. McCrary–El claimed that he suffered physical harm from the officers in both the first and second cell movements. The FCC's videotape of the first move was not produced at trial, but the videotape of the second movement was shown to the trial judge. The judge thereafter granted the appellees' motion to dismiss McCrary–El's complaint regarding use of force in the second cell movement, finding that his review of the videotape showed that there was no dispute of a material fact as to the use of excessive force during that move.

McCrary–El's complaint arises because the appellee officers were allowed to show the video of the second movement to the jury at trial; he argues that this was prejudicial and irrelevant to the issue at trial, namely, the amount of physical force used during the first cell move. He argues, too, that a nurse and health care supervisor testified for the state about his injuries, and therefore, that the video was redundant. He also asserts that the jury could easily have been confused as to whether the tape was of the first or second cell movement.

The government responds that the tape's benefit outweighed any possible prejudice because it showed McCrary–El's mobility and was thus highly probative of whether he had been injured previously. Regarding the testimony of the two health care providers, the officers argue that the providers testified only about McCrary–El's refusal to receive medical treatment after either move and about medication prescribed to him and that the video was therefore not cumulative on this issue. Finally, the officers defend the trial judge's decision to allow the video by asserting that there was no danger of confusing the jury by showing it. Defense counsel discussed the tape during opening statement and specifically told the jury that it would depict the subsequent cell movement, not the actual move at issue. The trial judge, moreover, advised the jury during instructions that the video was of the second cell movement of McCrary–El.

■ McCrary–El cites *Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322 (8th Cir. 1985), in which this court found reversible error when the trial court admitted a tape into evidence that depicted a tire rim accident. We find *Hale* is not analogous to the video at issue, however, because the *Hale* video dealt with an experimental test, while the tape in this case showed McCrary–El himself, shortly after the alleged assault took place. The admission of photographs is a matter within the sound discretion of the trial court and its decision will not be overturned absent a clear showing of abuse of discretion. *Hale* at 1333. We find no abuse of discretion on the part of trial judge in his

decision to allow the tape to be shown to the jury.

## IV.

McCrary–El next argues that the trial court erred by allowing officers to admit conduct violation reports that were not relevant and substantially prejudiced him. He claims that the reports should have been excluded as irrelevant under Fed.Rule of Evid. 401, that their prejudicial effect substantially outweighed their probative value under Rule 403, and that they contained inadmissible character evidence as prohibited by Rule 404. The officers respond that the reports were submitted to show that McCrary–El had a history of violent behavior and the consequent state of mind of the officers.

The trial court has the discretion to weigh probative value against unfair prejudice and its decision on admissibility will be accorded great deference. We begin our consideration of this issue with the observation that correction officers are clearly entitled to learn all that can be reasonably learned about the dangers of proposed actions before they undertake them. They are not required to expose themselves to unknown risks and are entitled to equip themselves with means of defense. The amount of force reasonably necessary to subdue prisoners is not the same for all prisoners. We are not prepared to say that preemptive force cannot be resorted to in the case of prisoners whom corrections officers reasonably believe to be unusually violent. The question of excessiveness of force, in other words, cannot be assessed in a vacuum; it will vary from circumstance to circumstance. Officers are certainly not required in all cases to wait until they are attacked before they resort to force. Such a rule would expose them to an unnecessary and unreasonable risk of harm.

The officers testified that they were aware of McCrary–El's reputation for violence because of several past incidents involving both guards and inmates, in addition to his past convictions for violent felonies. For instance, McCrary–El was transferred from one high security facility to another due to fear that he would cause a race riot. In addition, McCrary–El admitted on cross-examination that he had received numerous write-ups for threats and fighting, including findings that he had threatened other inmates for sex and drugs. The reports were therefore relevant, not just to the question of the subjective state of mind of these officers, but to the objective question as to what was reasonable force by any officer who knew McCrary–El's reputation. We think that the evidence might plausibly have been admitted under Fed.Rule of Evid. 405(b) but was certainly admissible under Rule 401. McCrary–El, moreover, was seeking punitive damages, which, as the trial court instructed the jury, required a showing that the defendants were "motivated by evil motive or intent" or were "callously indifferent to plaintiff's protected rights." We think that the evidence objected to was quite relevant to the defendants' motive and intent.

The test of Rule 403 is whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. We recognize the danger of unwarranted inferences from this evidence. But striking the balance is entrusted to the sound discretion of the trial judge and we cannot say that the decision to admit the evidence was an abuse of that discretion.

## V.

For his final argument, McCrary–El claims that the trial court erred in refusing to give his proposed jury instruction regarding the videotape of the first cell movement. Because it was undisputed at trial that the correction facility did videotape the first cell movement, he argues that the defendants' failure to produce the tape raised the inference that it contained matter unfavorable to them. McCrary–El therefore submitted the following instruction from *Devitt and Blackmar's Federal Jury Practice and Instructions,* Section 72.16:

> If a party fails to produce evidence which is under his control and reasonably available to him and not reasonably available to the adverse party, then you may infer that

the evidence is unfavorable to the party who could have produced it and did not. The court refused the proffered instruction and instead gave the following:

> If you find that a party intentionally destroyed evidence that was relevant to this lawsuit which had been under his control, then you may infer that the evidence was unfavorable to the party who intentionally destroyed it.

McCrary–El argues that this instruction required him to prove that the government destroyed evidence before an adverse inference could be drawn from its absence, and that this was error. We agree. We believe that he was entitled to argue to the jury that the government still had the videotape and was refusing to produce it because it was damaging to its case. By refusing to give the instruction, the court took the government's side on the factual question of whether the government still had the relevant tape, a question that the jury was privileged to resolve against the government because it admitted that the tape once existed.

 When, however, a particular jury instruction is assigned as error, the reviewing court must determine whether the instructions, taken as a whole and viewed in light of the evidence and the applicable law, fairly and adequately submitted the issues in the case to the jury. *Jones v. Board of Police Commissioners,* 844 F.2d 500, 504 (8th Cir.1988), *cert. denied,* 490 U.S. 1092, 109 S.Ct. 2434, 104 L.Ed.2d 990 (1989). An error in instructing the jury in a civil case does not require reversal if it is more probably harmless than not. *Ross v. Jones,* 888 F.2d 548 (8th Cir.1989). In the present case, we believe the trial court committed harmless error, as there was overwhelming evidence that McCrary–El did not suffer the injuries he claims.

The videotaping officer, as well as all other witnesses, testified that the officers used only reasonable force in restraining McCrary–El after he admittedly refused to allow the officers to place a cell-mate in his cell. The videotape of the second cell movement, taken a few hours after the first movement, showed no evidence that McCrary–El was injured. McCrary–El admitted that he did not com-

plain to his cell-mate of any injury or pain resulting from the move and the health care providers at the facility testified that McCrary–El refused treatment after the incident. We therefore find that there is no substantial chance that the result of the trial would have been different if the requested instruction had been given. The trial court's refusal to give plaintiff's proffered jury instruction was therefore harmless error.

### VI.

For the reasons stated, the trial court is affirmed in all respects.