995 F.2d 1062
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James M. FIELDS, Administrator of the Estate of Betty Elaine
VanMeter, deceased, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
 No. 92-1514.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 6, 1993.
Decided: June 16, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-91-1471-A)
 Argued: Richard Melvin Alvey, Alvey & Alvey, P.C., Woodbridge, Virginia, for Appellant.
 Terrence Emmet Haggerty, Bowman & Brooke, Detroit, Michigan, for Appellee.
 On Brief: John F. Anderson, McGuire, Woods, Battle & Boothe, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS, NIEMEYER, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 James M. Fields brought this action as administrator of the estate of Elaine VanMeter against General Motors Corporation alleging negligence, breach of warranty, and strict products liability. Fields argued that VanMeter died as a result of an accident caused by a defective power steering gear valve in her 1977 Oldsmobile Omega. The valve allegedly became inoperable when VanMeter was on a curve. Unable to navigate the curve, VanMeter left the road, struck a tree, and sustained fatal injuries. A jury found for General Motors. On appeal, Fields challenges several evidentiary rulings of the district court. Finding no error, we affirm.
 
 
 2
 Fields's principal contention on appeal is that the district court improperly excluded evidence of similar accidents in other General Motors automobiles. Fields offered evidence regarding an accident in a 1973 Cutlass Supreme Coupe. The driver in that case claimed that "his steering stuck while rounding a curve" and that as a result "the car struck a tree." (J.A. at 509.) An Oldsmobile Senior Product Engineer examined the vehicle and concluded "that the power steering gear valve appeared to have passed foreign material and under the circumstances of this incident, the driver may have needed added steering control to negotiate the curve." (Id.)
 
 
 3
 We agree with Fields that the circumstances surrounding the 1973 accident closely resemble those in VanMeter's case, and that the conclusions of Oldsmobile's own engineer can reasonably be construed as an admission that a malfunction in the power steering gear valve caused the accident. In products liability cases, however, "evidence of prior accidents is admissible only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case" being tried. Hale v. Firestone Tire & Rubber Co., 756 F.2d 1322, 1332 (8th Cir. 1985). General Motors has maintained throughout this litigation that between 1973 and 1977 it modified the power steering gear valve used in Oldsmobiles. Fields bore the burden of showing that the 1973 and 1977 power steering gear valves at issue were substantially similar, notwithstanding the alleged modifications.
 
 
 4
 In an attempt to satisfy this burden, Fields presented samples of the respective gear valves and invited the district court to conclude that the gears were the same. We cannot fault the district court for finding that this was an insufficient foundation for admitting the evidence. First, the gear valves were installed on different cars. A 1973 Cutlass Supreme Coupe is not a 1977 Oldsmobile Omega, and Fields presented no evidence that the gear valves function substantially the same in these different cars. Second, the alleged defect concerned the ability of the gear valve to channel microscopic particles in the power steering fluid. Fields presented no expert testimony demonstrating that the two gear valves were identical, had the same alleged defect, and therefore would have performed the same in similar conditions such as when a driver is attempting to steer through a curve. Courts are not experts in automotive engineering. Fields cannot expect a court to conclude merely by looking at two mechanical devices that they channel microscopic particles in substantially the same way. Because Fields did not establish substantial similarity in the operation of the gear valves, the district court did not abuse its discretion in not admitting the evidence of prior accidents.
 
 
 5
 Fields also urges that the district court erred in failing to admit into evidence statements made by General Motors in an appellate brief. General Motors filed the brief following a jury verdict in a case concerning a 1979 Chevrolet Monte Carlo. We question whether such statements should ever be admitted as evidence, see Hardy v. JohnsManville Sales Corp., 851 F.2d 742, 745 (5th Cir. 1988) (holding that admissions in appellate briefs are not admissible as evidence), but even if the statements were not per se inadmissible, Fields failed to lay an adequate foundation for admitting the statements into evidence. A 1979 Chevrolet is not a 1977 Oldsmobile. Fields bore the burden of showing substantial similarity, a burden that he failed to carry.
 
 
 6
 Fields also contends that the district court erred in admitting evidence of tests conducted by General Motors on exemplar vehicles. On February 25, 1992, approximately one month prior to the April 1, 1992, trial, General Motors conducted a videotaped demonstration of an exemplar vehicle travelling through the area where the accident occurred. Although the power steering gear was preloaded with particulate matter, no power steering failure occurred. Fields argues that such test results should be inadmissible unless (1) they were conducted by an independent expert, or (2) opposing counsel had an opportunity to be present at the experiment. See Fortunato v. Ford Motor Co., 464 F.2d 962, 966 (2d Cir.), cert. denied, 409 U.S. 1038 (1972). Under present practice, however, the failure to provide notice and an opportunity to be present at an experiment is not a ground for rejecting experimental evidence; failure to provide notice may be argued regarding the weight of evidence, but not its admissibility. See John W. Strong et al., McCormick on Evidence § 202, at 867 n.32 (4th ed. 1992). We have found no cases following Fortunato in requiring notice and an opportunity to be present at an experiment; moreover, the statement Fields relies upon in Fortunato is dictum. We decline to impose the prophylactic rule that Fields suggests.
 
 
 7
 Finally, Fields argues that the district court erred in finding that Steven R. Dawson was qualified to testify as an expert witness. Dawson, the West Virginia State Trooper who investigated VanMeter's accident, testified on cross-examination that in his opinion the accident occurred because VanMeter fell asleep. This conclusion was based on the lack of any evidence (skid marks, etc.) indicating that VanMeter had braked.
 
 
 8
 Dawson testified that he had had approximately one year of experience as a state trooper at the time of the investigation and four years of experience at the time of trial. He estimated that he had investigated sixty to seventy accidents prior to VanMeter's. He further indicated that he had completed eighty hours of accident investigation training and forty hours of accident reconstruction training. Given this background, the district court did not abuse its discretion in allowing Dawson to testify as an expert regarding reconstruction of accidents.
 
 
 9
 For the foregoing reasons, we affirm the judgment of the district court.
 
 AFFIRMED