John LAMKE, d/b/a Lamke's Auto Body Shop, Appellant,

v.

Lola Jean LYNN, Respondent.

No. 48008.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 25, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 30, 1984.

Larry G. Mittendorf, Union, for appellant.

Lee Young, Union, for respondent.

REINHARD, Chief Judge.

Plaintiff appeals after the entry of a directed verdict in his action to enforce a statutory artisans lien, § 430.020, RSMo. Supp.1983. In his first amended petition, plaintiff alleged that defendant Reed owed him $4,987.30 for labor and materials furnished on a 1977 Kenworth truck pursuant to a written memorandum and that the truck had been thereafter transferred to defendant Lola Jean Lynn with actual notice of the outstanding indebtedness. He requested a judgment against defendants and imposition of a lien on the truck. The case initially was heard before a Franklin

County Associate Circuit judge without a jury. A judgment was rendered for the plaintiff and against defendants. Reed did not appeal the judgment against him. Defendant Lynn made application for a trial de novo in Franklin County Circuit Court. The case was heard before a jury. At the close of plaintiff's evidence, defendant moved for a directed verdict which was sustained. Plaintiff contends on appeal there was sufficient evidence for submission of his claim to the jury.

■■■ In reviewing the propriety of the granting of a motion for a directed verdict, we must treat plaintiff's evidence as true and give him the benefit of all reasonable inferences derived therefrom. *Young v. Mercantile Trust Co. National Association,* 552 S.W.2d 247, 250 (Mo.App.1977). A trial judge may only grant a directed verdict at the close of the plaintiff's case when all the evidence and the reasonable inferences to be drawn therefrom are so strongly against the plaintiff that there is no room for reasonable minds to differ. *Herberholt v. DePaul Community Health Center,* 625 S.W.2d 617, 624 (Mo.banc 1981).

The evidence established that in the fall of 1978, Reed, an independent truck driver, purchased a 1977 Kenworth truck. On July 13, 1979, Reed signed a work authorization for repairs to the rear end of the truck in the amount of $2,749.69. On September 17, 1979, he signed authorization for aluminum wheels in the amount of $500.00. On January 2, 1980, he signed a work authorization for transmission repairs in the amount of $1,737.61. After the repairs were made or the materials furnished in each of these instances, plaintiff released the truck to Reed and allowed him to charge his bills on account as Reed needed the truck to earn the money to pay the repair bills.

During the summer of 1979, Reed separated from his wife and was in the process of obtaining a divorce. He moved into the house of Lola Jean Lynn, who was also in the trucking business. During 1979, Reed had substantial financial problems and was unable to keep the loan payments on the truck current. In July, the truck was repossessed by the lienholder. Lynn loaned Reed the money necessary to pay the back payments and the truck was returned to his possession. Sometime in late 1979, the truck broke down and was in need of substantial engine and transmission work. In December, the truck was taken to Cummins Diesel where the engine work was performed. The repair bill was charged to Lynn's account at Cummins Diesel with her permission. The transmission work was done at plaintiff's garage with Lynn's knowledge. By this time, Reed's indebtedness to her for the truck had grown to $5,000.00 and she became concerned that if he were killed, she would not be repaid. Consequently, Reed agreed to transfer the equity in the truck to Lynn. In February, 1980, he transferred title to the truck to her, she assumed the loan of $24,000.00 and commenced making the monthly payments. At that time the truck was worth approximately $45,000.00. According to Reed, when he repaid the debt to her, he would regain title. At the time of trial, he had only repaid her $580.00 and she was still the title owner of the vehicle.

Reed testified on direct examination that in January, prior to the transfer, he had informed Lynn that he "owed [Lamke] some money" for the transmission and the wheels. He testified that he did not mention he had signed work orders nor did he state a lien existed on the truck. He stated he had informed her of the work on the rear end of the truck, but acknowledged he had not told her he owed any money for those repairs. Lamke testified that in November or December of 1979, he spoke to Lynn. In his words, "I mentioned to her that [Reed] couldn't pay his bill at our shop until—if he didn't have his truck to operate." He did not give her any details on the type of work done or tell her how much money was owed for the repairs, nor did he tell her of the existence of a lien on the truck.

Plaintiff's claim arises from the statutory artisans lien in Sections 430.020 and

430.040, RSMo.Supp.1983. Section 430.020 states:

> [E]very person who furnishes labor or material on any vehicle or aircraft, part or equipment thereof, who shall obtain a written memorandum of the work or material furnished, or to be furnished, signed by the owner of such vehicle or aircraft, part or equipment thereof, shall have a lien for the amount of such work or material as is ordered or stated in such written memorandum. Such liens shall be on such vehicle or aircraft, or part or equipment thereof, as shall be kept or stored, or be placed in the possession of the person furnishing the labor or material.

Section 430.040.2, provides:

> The lien shall be valid against the vehicle or aircraft, part or equipment thereof, ... in the possession of any person receiving or purchasing the same, with notice of the lien claim; ....

■ The enactment of the statutory artisan lien did not destroy the common law lien of an artisan who furnished labor or material in the repair of a vehicle while he was in possession of it. *McCluskey v. DeLong,* 239 Mo.App. 1026, 198 S.W.2d 673, 675 (1946). Being dependent upon possession, the common law lien is lost if the lienholder voluntarily parts with possession of the vehicle. *State ex rel. Rueseler Motor Co. v. Klaus,* 263 S.W.2d 71, 72 (Mo.App.1953). However, the purpose of Sections 430.020 and 430.040 is to give the artisan a lien that he did not have at common law, in that if he secures a written memorandum from the owner then the writing will continue the lien after the artisan has parted with its possession providing a purchaser or other person takes possession with notice of the lien claim. *Jackson v. Kusmer,* 411 S.W.2d 257, 259 (Mo.App.1967); *McCluskey v. DeLong,* 239 Mo.App. 1026, 198 S.W.2d 673, 675 (1946).

■ There is no question but that plaintiff established he had a statutory lien on the truck in question for the amounts stated. The sole issue before us is whether defendant Lynn received or purchased the truck with notice of the lien claim. There is no definition of notice contained in the statute. The word "notice" can have various meanings. The meaning given by the courts is to be controlled largely by the context and the purpose and intent of the statute which provides for or requires it. 66 C.J.S. *Notice* § 1, p. 634–35. Generally speaking, notice is of two kinds, actual and constructive. *Barrickman v. National Utilities Co.,* 191 S.W.2d 265, 269 (Mo.App. 1945); 58 Am.Jur.2d *Notice* § 2, p. 487.

■ Actual notice is either express or implied. *Crane v. Liberty Foundry Co.,* 322 Mo. 592, 17 S.W.2d 945, 957 (1929); 58 Am.Jur.2d *Notice* § 5, p. 488. Express notice is that kind of actual notice which consists of knowledge brought personally home, *Buckley v. Coe,* 385 S.W.2d 354, 358 (Mo.App.1964); while implied notice is knowledge imputed and charged from surrounding facts and circumstances, so as to hold one to have known a fact which he could have discovered or learned by the exercise of ordinary care.

■ In Missouri, it has been uniformly held that actual notice includes both express and implied notice, that is, notice is regarded in law as actual where the person sought to be charged therewith either knows of the existence of the particular fact in question or is conscious of having the means of knowing it, even though such means may not be employed by him. Whatever fairly is sufficient to put an ordinarily prudent person on inquiry constitutes notice to him of such facts as would be disclosed by reasonable pursuit and proper inquiry. *Golden v. National Utilities Co.,* 356 Mo. 84, 201 S.W.2d 292, 297 (1947); *Crane v. Liberty Foundry Co.,* 322 Mo. 592, 17 S.W.2d 945, 947 (1929); *Hatcher v. Hall,* 292 S.W.2d 619, 625 (Mo.App. 1956).

■ One is put on inquiry and charged with notice of the facts which would be disclosed thereby, only when the inquiry becomes a duty, and the failure to make it a negligent omission. *Hatcher v. Hall,* 292 S.W.2d 619, 625 (Mo.App.1956). Mere ru-

mors are neither notice nor the ground-work for the required inquiry which will charge a person with knowledge of what inquiry would have revealed. *Morrison v. Juden*, 145 Mo. 283, 46 S.W.2d 994, 999 (1898); 58 Am.Jur.2d *Notice* § 12, p. 495. Actual notice may be shown by direct evidence, or it may be inferred from facts and circumstances. Circumstances coming to the knowledge of the purchaser, which would put a prudent person upon inquiry should go to the jury as evidence of notice. The inference to be drawn from the facts and circumstances is one of fact. *Drey v. Doyle*, 99 Mo. 459, 12 S.W. 287, 288–89 (1889); *Voelpel v. Phoenix Mutual Life Insurance Co.*, 183 S.W. 679, 681 (Mo.App. 1916); 66 C.J.S. *Notice* § 22, pp. 675–76; See *Hatcher*, 292 S.W.2d at 625–26.

■ In the case at bar, there is no question that Lynn did not have express notice of the lien claim. However, we believe there was sufficient evidence presented of the circumstances bearing upon whether a prudent person was put on inquiry that the issue of actual notice was a question for the jury. In reaching this conclusion, we have relied on the following: The evidence established that Reed and Lynn, who were both in the trucking business, had a close relationship. He was living in her home during the time the bills were incurred and the truck transferred, for less than full value. She was aware of his financial and business affairs. The evidence established she knew that Reed recently incurred bills with plaintiff for repairs to and materials furnished for the truck and that some of the bills remained unpaid as of the date of transfer of the truck. Lynn is chargeable with knowledge of the provisions of Section 430.020, RSMo. 1978 (as is everyone). *Kansas City v. La-Rose*, 524 S.W.2d 112, 120 (Mo.banc 1975); 58 Am.Jur.2d *Notice* § 21, p. 503; 66 C.J.S. *Notice* § 13(b), p. 649. *See Kitchen v. St. Louis, Kansas City & Northern Railway Co.*, 69 Mo. 224 (1878). The only additional fact necessary to establish a statutory lien was the existence of signed work orders, a fact which inquiry of either plaintiff or Reed could easily have disclosed. This is not a case in which Lynn merely knew that repairs had been made on the truck as that would be insufficient by itself to incite inquiry in an ordinarily prudent person. Neither was her knowledge the product of rumor or idle speculation by persons unconnected with this transaction. Rather, she knew directly from her predecessor in title that specific repairs had been performed and materials furnished by plaintiff and were *unpaid at the time* of transfer of the truck. Under these circumstances, the issue of whether Lynn had actual notice of the lien claim was for the jury.

Reversed and remanded.

CRANDALL and KAROHL, JJ., concur.