**SCHOOL DISTRICT OF the CITY OF INDEPENDENCE, MISSOURI, NO. 30, Appellant,**

**v.**

**U.S. GYPSUM COMPANY, Respondent.**

**No. WD 39135.**

Missouri Court of Appeals,
Western District.

March 1, 1988.

As Modified May 3, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 3, 1988.

Application to Transfer Denied
June 14, 1988.

Humphrey, Farrington & McClain, P.C., Norman Humphrey, Jr., Kenneth B. McClain, Steven P. Callahan, Independence, for appellant.

Deacy & Deacy, Spencer J. Brown, Kansas City, Morgan, Lewis & Bockius, James D. Pagliaro, Amelia C. Benton, Philadelphia, Pa., for respondent.

Before PRITCHARD, J., Presiding, and GAITAN and COVINGTON, JJ.

COVINGTON, Judge.

This case presents cross appeals from an action for damages based on strict products liability. Plaintiff, the School District of the City of Independence, Missouri, No. 30 (School District), sought recovery for injury to property arising out of the use of Audicote, a ceiling plaster containing asbestos, in seven of its schools. Plaintiff brought suit against defendant United States Gypsum Company (USG), the manufacturer of Audicote, to recover the costs of removing Audicote and certain asbestos-contaminated furnishings from the seven school buildings. Plaintiff alleged that at the time the Audicote was sold and installed by defendant in plaintiff's school buildings, the Audicote was in a defective condition and unreasonably dangerous. The sole defect alleged was that Audicote released asbestos into the atmosphere of the buildings, contaminated the buildings and furnishings, and thereby exposed occupants of the buildings to a continuing health hazard. The School District also alleged strict liability for failure to warn of the danger.

In addition to the strict liability claims for actual damages, the School District sought punitive damages on the theory that USG knew of the defect and danger of Audicote when it sold the product to plaintiff, and that USG thereby showed com-

plete indifference to, or conscious disregard for, the safety of others.

The jury awarded the School District $650,000.00 in actual damages ($61,000.00 less than requested) and $400,000.00 in punitive damages. The trial court granted defendant's motion for judgment notwithstanding the verdict as to the punitive damage award, but sustained the award of actual damages. The School District appeals from the judgment n.o.v., seeking reinstatement of the jury's punitive award. USG cross-appeals from the adverse judgment. Affirmed.

Asbestos is the generic name for a class of naturally-occurring fibrous minerals. There are four major varieties of asbestos: chrysotile, crocidolite, tremolite, and anthophyllite. Each type of asbestos has unique physical properties. Asbestos has been commonly used as a component of various building materials such as insulation, fireproofing, and acoustical ceiling tiles and plasters. Prior to 1972, USG manufactured an acoustical ceiling plaster, Audicote, which contained 10 to 12 percent chrysotile asbestos and 3 to 5 percent tremolite or anthophyllite asbestos. Between the years 1957–1969, USG sold Audicote to the School District for installation as a ceiling material in seven schools being constructed by the School District.

Since 1982, the United States Environmental Protection Agency (EPA) has required school districts to inspect to determine whether their buildings contained asbestos materials. At the time of the trial of this case, however, the EPA had not established guidelines for determining the existence of a hazard sufficient to justify removal or abatement.

In 1979, Independence school administrators, in response to recommendations promulgated by the EPA, undertook an inspection of the Independence schools in order to determine whether any of the building materials used in the schools contained asbestos. As a result of this inspection and subsequent testing of materials, the School District determined that Audicote had been installed in seven of its schools, and that Audicote contained asbestos.

Because Audicote was considered a "friable" material (i.e., a material capable of being crumbled, pulverized or powdered in the hand), and because School District officials had become aware, through consultation with the E.P.A., that friable asbestos-containing ceiling materials presented some potential for release of asbestos, the School District undertook a program of "encapsulating" the Audicote ceilings in its schools in order to minimize the possibility of asbestos release. Encapsulation consisted of painting the ceilings with a heavy paint, recommended by the E.P.A., in order to entrap and prevent release of asbestos fibers.

The encapsulation was considered a short-term solution to the problem. Because the heavy paint used to encapsulate Audicote ceilings allowed water to build up behind the painted surfaces, leaks which eventually developed were more serious than had previously been experienced, sometimes causing dropouts of Audicote material. The School District also experienced continuing damage to ceilings from vandalism and accidental impacts and received numerous reports of dusting. The School Board became increasingly concerned about the hazards of asbestos exposure, and in 1984 voted to remove asbestos-containing materials, including Audicote, from the schools.

THE SCHOOL DISTRICT'S APPEAL

In its first point of error, the School District alleges that the trial court erred in granting judgment notwithstanding the verdict on the issue of punitive damages. The School District argues that the jury's $400,000 punitive damage award was supported by substantial and competent evidence that USG knew its product Audicote was unreasonably dangerous and defective, and that USG, by selling Audicote to the School District with such knowledge, and without adequate warning, demonstrated complete indifference to, or conscious disregard for, the safety of others.

■ A motion for judgment n.o.v. presents the same question as a motion for

directed verdict at the close of all the evidence; i.e., whether the plaintiff made a submissible case. *Anderson v. Childers,* 686 S.W.2d 38, 39 (Mo.App.1985); *Dockery v. Mannisi,* 636 S.W.2d 372, 376 (Mo.App. 1982). A defendant's motion for judgment n.o.v. is properly granted if the motion identifies one or more elements of the plaintiff's case which are not supported by the evidence. *Stegeman v. First Mo. Bank of Gasconade Cty.,* 722 S.W.2d 349, 352 (Mo.App.1987). In reviewing the trial court's ruling, the appellate court must consider the evidence in a light most favorable to the plaintiff and accept such evidence as true, giving plaintiff the benefit of all favorable inferences that may reasonably be drawn from that evidence, and disregarding defendant's evidence except as it aids the plaintiff's case. *Dockery v. Mannisi,* 636 S.W.2d at 376. (The School District argues extensively that the standard for submissibility applied by the trial court was improper; however, because the reviewing court determines whether a submissible case is made, it is unnecessary to evaluate the School District's argument in this regard.)

■ Punitive damages were submitted to the jury by an instruction based on MAI 10.04, under which punitive damages in a product liability action may be awarded if the jury finds that the defendant knew of the defect and danger of the product at the time it sold the product, and that the defendant thereby showed complete indifference to or conscious disregard for the safety of others. Relying upon the Committee's Comments to MAI 10.04, the court in *Lewis v. Envirotech Corp.,* 674 S.W.2d 105, 114 (Mo.App.1984) defines "knowledge" in this context as actual knowledge.

No Missouri case has permitted submission of a punitive damage claim in a strict products liability case on the theory that the defendant should have known of a dangerous defect in its product. See, e.g., *Bhagvandoss v. Beiersdorf, Inc.,* 723 S.W. 2d 392, 397–98 (Mo. banc 1987); *Love v. Deere and Co.,* 684 S.W.2d 70, 77 (Mo.App. 1985); *Sparks v. Consolidated Aluminum Co.,* 679 S.W.2d 348, 354 (Mo.App.1984);

*Racer v. Utterman,* 629 S.W.2d 387, 397 (Mo.App.1981), all requiring actual knowledge of product defect. See also, *Laney v. Coleman Co., Inc.,* 758 F.2d 1299, 1304–05 (8th Cir.1985), ("Missouri law does not permit submission of a punitive damage claim on a theory of constructive knowledge of product defect").

The School District's allegation of defect in the product Audicote was that Audicote released asbestos fibers into the atmosphere. To make a submissible case for punitive damages, the School District was required to produce evidence that USG had actual knowledge of the product Audicote's propensity to release asbestos fibers. The record is devoid of evidence to support a finding of actual knowledge.

The School District's evidence established that Audicote would release asbestos fibers if abraded (rubbed against, scraped) and that asbestos fibers had been released from the Audicote ceilings in the School District's schools. The School District produced no evidence, however, that, at the time USG sold Audicote to the School District, USG had knowledge of these facts. The School District's only factual allegations relating to USG's knowledge of the properties of Audicote were mere suggestions that USG received reports of water damage to Audicote ceilings, which would release asbestos. The School District's allegations are not supported by evidence. While the School District did produce evidence of water damage to Audicote ceilings, it did not show that USG was aware of the problem. USG's quality assurance manager, John Hernan, who had observed flat-roofed schools containing Audicote in the 1960's, conceded on cross-examination that "the potential for leaking is greater with a flat roof than a pitched roof." Contrary to the School District's assertions, however, Hernan did not testify that he was aware of the problems water damage caused to Audicote ceilings at that time. There is no evidence in the record to support the School District's claim that USG knew, at the relevant time, that water damage to Audicote ceilings would release asbestos into the air.

The School District also relies on the testimony of Dr. Gerritt Schepers, an expert in lung diseases, to establish USG's actual knowledge of the defect and danger of Audicote. In 1955, Dr. Schepers, acting on his own and without funding from USG, performed experiments in which he exposed laboratory animals to combinations of asbestos and gypsum. During that year he showed the experiments to Edward Beuthine, USG's then safety manager. Dr. Schepers described the "bad results" obtained from combining asbestos in various compounds, the "bad results" being asbestosis, emphysema, and proliferation of epithelial tissues in the lungs. Later, having learned from an advertisement that USG was marketing a new product which combined gypsum and asbestos, Dr. Schepers wrote to USG protesting the "folly" of adding asbestos to gypsum, noting his experiments.

Accepting Dr. Schepers' testimony as true, the evidence shows that USG was informed of Dr. Schepers' experiments and opinions concerning the potential danger of incorporating asbestos into gypsum products during 1955. There is no evidence in the record, however, of the validity of Dr. Schepers' experiments, nor of the methods by which the experiments were conducted. There is no evidence in the record to show any similarity between Dr. Schepers' experimental conditions and the conditions existing in the buildings with Audicote ceilings. There is no evidence of the gypsum/asbestos ratio or length of exposure required to produce "bad results". There is no evidence in the record that any of the data supporting Dr. Schepers' experiments was communicated to Mr. Beuthine or any other agent of USG. Dr. Schepers' testimony, even when viewed most favorably to the School District, does nothing to establish USG's actual knowledge of Audicote's propensity to release asbestos into the atmosphere.

The School District's own characterization of its evidence, as argued, falls far short of demonstrating USG's actual knowledge of a defect in Audicote—its propensity to release asbestos fibers. The School District argues that the company's actual knowledge of the dangerously defective character of Audicote may be discerned from USG's longstanding knowledge of the hazards of asbestos when used at its own plants, the burgeoning medical knowledge of the hazards of asbestos exposure in non-occupational settings, and continued reports of water damage to Audicote ceilings, which would release components of the product into the air. The School District argues that these facts, at a minimum, are sufficient to place a reasonably prudent person on actual notice of the danger of Audicote.

The School District cites *Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322 (8th Cir.1985), for the proposition that actual knowledge can be inferred from a defendant's generalized knowledge of hazards, including hazards associated with brands or designs other than those directly at issue. While *Hale* does show that actual knowledge may be proven by circumstantial evidence (i.e., evidence which would allow the jury to infer that defendant had actual knowledge of a danger), *Hale* was not a case in which the plaintiff merely alleged facts from which the defendant could have or should have inferred a danger. In *Hale*, the plaintiff adduced evidence from which the jury could infer that Firestone had actual knowledge of the danger of explosive separations of its RH5 truck wheel rim. A 1952 Firestone memorandum requesting a list of complaints regarding the RH5 rim, including those complaints involving explosive separations, strongly supported the finding of actual knowledge. The School District has not produced evidence of knowledge comparable to the evidence in *Hale*.

The School District cites *Lamke v. Lynn*, 680 S.W.2d 285 (Mo.App.1984), for the proposition that a person may be charged with actual knowledge if he knows of the hazard or has sufficient knowledge to deduce it. *Lamke* is inapposite. It concerns the actual notice requirement in a statutory lien, not the requirement of actual knowledge of defect in a strict products liability punitive damages claim.

The School District's evidence fails to satisfy the strict requirements for a submissible case of punitive damages under Missouri law.

Because the School District failed to produce evidence that USG had actual knowledge of a defect or danger in Audicote, it is unnecessary further to address the sufficiency of the School District's evidence regarding USG's alleged complete indifference to, or conscious disregard of, the safety of others.

In its second and final point, the School District claims that the court erred in excluding four exhibits, each being internal correspondence of USG from the late 1930's, concerning a USG employee who allegedly contracted silicosis or asbestosis. The School District asserts that the exhibits were admissible to prove USG's knowledge of asbestos hazards at low levels of exposure. Noting that the trial court's judgment n.o.v. was based upon insufficiency of the evidence, the School District complains that the trial court itself exacerbated the alleged insufficiency by excluding the exhibits.

■ "Refusal to admit evidence does not constitute reversible error unless it would have changed the result reached." *Green v. Stanfill,* 641 S.W.2d 490, 492 (Mo.App.1982). Unless admission of the excluded exhibits would have cured the insufficiency of the evidence on punitive damages, error, if any, is not reversible.

To make a submissible case on its claim for punitive damages with respect to the element of knowledge, the School District was required to produce evidence that USG had actual knowledge of a defect in its product Audicote. The excluded documents related only to USG's general knowledge of the hazards of asbestos exposure. As such, they had no tendency to prove USG's knowledge of Audicote's propensity to release asbestos fibers into the atmosphere. Consequently, the excluded documents would not have cured the insufficiency of the evidence on the School District's punitive damage claim.

It is not necessary to consider whether the evidence was admissible as against USG because, assuming that its exclusion was error, it was harmless error since no submissible case would have been made against USG. Rule 84.13(b); *see Chaney by Chaney v. Creten,* 658 S.W.2d 891, 893 (Mo.App.1983).

## UNITED STATES GYPSUM COMPANY'S APPEAL

■ In its first point, USG contends that the trial court erred in admitting evidence relating to Wayne Fleming's exposure to asbestos-containing products and his physical condition. Wayne Fleming was a school custodian in the Independence Schools. His disabling respiratory ailments were allegedly caused or aggravated by exposure to asbestos-containing products in the Independence schools. USG argues that the Fleming evidence was irrelevant because it was never linked to the product Audicote, and that the evidence was highly inflammatory and therefore prejudicial.

Evidence is relevant, and therefore admissible, if the fact it tends to establish tends in turn to prove or disprove a fact in issue. *Charles F. Curry & Co. v. Hedrick,* 378 S.W.2d 522, 536 (Mo.1964). A central factual issue in the case was whether or not asbestos released from the product Audicote posed a health hazard to building occupants in the Independence Schools. The School District's factual theory was that asbestos could cause a variety of lung diseases, that these diseases were extremely serious, that there was no known threshold for exposure to asbestos below which disease could not be expected to occur, and that any product which increased the asbestos burden within the school buildings constituted an unreasonable danger. The School District introduced other evidence to establish that Audicote released asbestos into the school environments. The Fleming evidence was relevant to show the nature and severity of the harm being caused by the presence of breathable asbestos in the Independence schools.

Wayne Fleming, retired custodian, had been employed by the School District for

more than thirteen years. From 1966 until 1971, Mr. Fleming swept and dusted in Truman High School during the school year and worked on special crews in other schools during summers. After 1971, Mr. Fleming worked exclusively at Truman High School. Truman High School contained asbestos fireproofing products (manufactured by W.R. Grace, an original defendant in this case). The other schools in which Mr. Fleming worked on summer crews contained both Audicote, manufactured by USG, and other asbestos products not manufactured by USG.

At the time of trial Mr. Fleming suffered from a lung disorder as well as from other medical problems. He testified regarding his employment history with the School District and his working conditions. He also described his physical condition as he understood it.

Following Mr. Fleming's testimony, Dr. Gerritt Schepers, plaintiff's expert in lung diseases, testified regarding the contribution of asbestos to Mr. Fleming's lung condition based upon Dr. Schepers' examination of Fleming's medical records and a copy of an X-ray. According to Dr. Schepers, certain small irregular focal opacities in Mr. Fleming's lungs were caused by inhalation of asbestos dust. In response to a hypothetical which outlined Fleming's occupational exposure to asbestos, Dr. Schepers gave his opinion that the inhalation exposure to asbestos which resulted from those occupations contributed to Mr. Fleming's lung disease.

USG complains that there was no evidence that the dust to which Mr. Fleming was exposed contained asbestos from Audicote, and that, therefore, Mr. Fleming's lung condition was irrelevant to the issue of whether Audicote was unreasonably dangerous. Even assuming there was no such linking evidence, the Fleming evidence was admissible. The School District was not called upon to prove that dust from Audicote had caused personal injury. The Fleming evidence was introduced to show the nature and seriousness of the harm posed by asbestos contamination in the Independence schools. Together with evidence establishing Audicote as a source of asbestos contamination, the Fleming evidence tended to prove not only that Audicote was dangerous, but also that the danger was an unreasonable one.

Moreover, assuming, arguendo, that the jury drew the inference that Audicote had contributed to Fleming's lung condition, such an inference cannot be said to be wholly unwarranted. Dr. Schepers' testimony supported the inference that Audicote dust was a factor contributing to Fleming's condition. Dr. Schepers stated that asbestosis can be caused by heavy exposure to asbestos for a short time, if there is a long latency period, or by little exposure (around five million particles per cubic foot or less) for a long period of time.

Dr. Peter Tuteur, a physician specializing in internal medicine with emphasis on pulmonary disease, testified that the typical latency period for asbestosis is about fifteen years. Fleming began working in schools containing Audicote in 1968. The inference that asbestos-laden dust from Audicote contributed to Mr. Fleming's lung condition is not unreasonable and is not unrelated to the issue of an asbestos health hazard in the Independence schools.

The testimony of James Hubbard, a materials scientist and microscopist, provided additional bases on which reasonably to infer that Wayne Fleming was exposed to dust from the product Audicote. Mr. Hubbard, based on his observation and tests of Audicote in the Independence schools, stated that Audicote had released asbestos fibers into those school environments. Mr. Fleming had been exposed to dust while sweeping floors and cleaning desks and air registers in the seven Independence schools involved in this case. Although there was no direct evidence that the dust to which Mr. Fleming was exposed contained asbestos fibers from Audicote, the following evidence substantiates a reasonable inference to that effect: Audicote contains asbestos; Audicote is soft and friable (can be powdered in the hands); asbestos fibers are released upon even minor disturbances; Audicote ceilings were frequently gouged, cut, and subjected to water damage; there

were dropouts of large sections of Audicote from water-damaged ceilings in Ott school; dust came from the ceilings; dust on light fixtures was lighter in color than dust on floors; schools with Audicote were dustier than those without; and dusting ceased once the Audicote was removed.

The trial court's determination of whether proffered evidence is relevant will be upheld on appeal absent a showing of abuse of discretion. *Counts v. Thompson,* 359 Mo. 485, 222 S.W.2d 487, 493 (1949); *Moreland v. State Farm Fire and Casualty Co.,* 662 S.W.2d 556, 565 (Mo.App.1983). It was proper for the trial court to allow the jury to consider a broad spectrum of facts and circumstances bearing upon the issue of unreasonable danger. *See Nesselrode v. Executive Beechcraft, Inc.,* 707 S.W.2d 371, 378 (Mo. banc 1986). USG had ample opportunity to impeach the credibility of Dr. Schepers and to counter the evidence of Mr. Fleming's asbestosis with testimony of its own experts. The weight to be given the evidence was for the jury to consider.

USG asserts that, even if the evidence is relevant, its inflammatory, prejudicial nature outweighs its probative value, citing *Stapleton v. Griewe,* 602 S.W.2d 810 (Mo. App.1980), for four negative factors to be considered. A full discussion on the merits of this claim is unwarranted. Briefly, a review of the entire record indicates a very slight possibility that facts of Fleming's illness could have unduly aroused the jury's emotions, slight probability that the evidence created a side issue which would have unduly distracted the jury from the main issues in the case, and no likelihood that the evidence and counterproof consumed an undue amount of time. Moreover, it is notable that USG's argument that there was no logical basis for concluding that Audicote had caused or contributed to Mr. Fleming's lung disease tends to defeat USG's contention that the evidence was prejudicial.

Whether the possibility of prejudice outweighed the probative value of the evidence was a matter for the trial court's sound discretion. The Fleming evidence cannot be said to have introduced numerous new controversial points and a confusion of issues, nor can it be said to have constituted unfair surprise or undue prejudice disproportionate to the usefulness of the evidence. *Douglas v. Twenter,* 364 Mo. 71, 79, 259 S.W.2d 353, 357 (Mo.1953). The trial court did not abuse its discretion in admitting this evidence.

■ USG's second point asserts that the erroneous interjection of punitive damages evidence and argument prejudiced the jury and influenced its verdict for the School District and against USG.

As to questions of fact and matters affecting determination of issues of fact, the decision whether to afford or deny a new trial is for the trial court's sound exercise of discretion. *Cook v. Cox,* 478 S.W.2d 678, 682 (Mo.1972). The trial court has a unique opportunity to view and evaluate the actual presentation of evidence and judge the many trial intangibles not discernable from the mere record. *Niccoli v. Thompson,* 713 S.W.2d 579, 581 (Mo.App. 1986). Appellate review is limited to the determination of whether or not the trial court has abused its discretion. Here, the trial court found that submission of the issue of punitive damages to the jury was erroneous. In its finding, the trial court specifically stated that the submission did not taint the jury's verdict as to actual damages. The trial court noted that the amount of actual damages awarded by the jury was less than the School District claimed.

USG relies upon *Love v. Deere & Co.,* 684 S.W.2d 70 (Mo.App.1985). In *Love,* the trial court determined specifically that the improper submission of the punitive damage instruction had tainted the underlying verdict. This court affirmed the grant of a new trial noting that the trial court was emphatic in expressing its opinion that the award for actual damages was irrevocably tainted by the evidence and argument relative to punitive damages. *Id.* at 77. Although this court observed that the amount of actual damages awarded was not excessive, this court gave deference to the trial court's discretion. Further, the plaintiff

made no argument for reinstatement of its actual damage award but continued to claim entitlement to punitive damages. This court concluded that the new trial order must therefore be affirmed. *Love,* consequently, is distinguishable from the present case.

In essence, USG argues that the actual damage verdict was excessive, and that the jury was prejudiced by the improperly admitted evidence as to punitive damages. If supported by the record, this claim can be cured only by a new trial. *Cignetti v. Camel,* 692 S.W.2d 329, 336 (Mo.App.1985). To prevail on appeal, USG must show: first, that the evidence, when viewed in the light most favorable to the verdict, does not warrant such a verdict; and, second, that there was error sufficient to cause prejudice. *Id.* The evidence, when viewed in the light most favorable to the verdict, warrants the verdict for actual damages. The School District's evidence showed that the actual costs attributable to removal of Audicote totaled $711,487.22. Less than $74,000 of the total amount was seriously disputed by USG as being not properly attributable to the removal. The jury could reasonably have awarded $650,000 in actual damages. See *Fowler v. Park Corporation,* 673 S.W.2d 749, 758 (Mo. banc 1984).

As to *Cignetti's* second requirement, there is no error sufficient to cause prejudice. The actual damages in this case were clearly segregated from the punitive damages. There is no extrinsic indication of passion or prejudice in the award of actual damages. There is no inference that the award of actual damages included any punitive effect. The amount of the punitive damage award, $400,000, represented .04 percent of USG's net worth.

USG claims that the School District's statements during closing argument in support of the punitive damage award were inflammatory. The determination of prejudicial effect of final argument is another issue within the trial court's discretion. *Pfeffer v. Kerr,* 693 S.W.2d 296, 305 (Mo. App.1985). This assignment of error has been considered, noting, specifically, the School District's recommendation that an award of one million dollars in punitive damages would be a mere slap on the wrist in light of USG's net worth of a billion dollars, and considering the School District's suggestion that the jury teach USG a lesson and send it a message. The trial court did not abuse its discretion.

■ USG's third point alleges that the trial court erred in admitting documents and expert testimony of the hazards of other asbestos-containing products, and of the hazards of asbestos in general, without foundation evidence linking those hazards to Audicote.

USG alleges the trial court erred in admitting the following: documents containing application warnings for SprayDon, a mineral-wool based, spray-applied fireproofing material containing asbestos and manufactured by USG; documents concerning experiments on laboratory animals exposed to high concentrations of asbestos fibers; documents concerning removal or handling of asbestos-containing products in USG's own plants; and testimony from two of the School District's experts, Dr. Peter Tuteur and Dr. Kaye Kilburn, regarding asbestos-related diseases.

If evidence is admissible for one valid purpose, it cannot properly be excluded. *Boehmer v. Boggiano,* 412 S.W.2d 103, 110 (Mo.1967). The SprayDon documents were relevant to demonstrate both the feasibility of warning, and USG's knowledge of asbestos hazards in general. The remaining documents complained of were admissible to show USG's knowledge of asbestos health hazards. Issues of warning and of USG's knowledge were in the case. USG requested no limiting instructions with regard to the documents. The trial court's ruling as to these documents was not error.

Dr. Tuteur testified at length regarding the physiological effects of asbestos on the human lung, and the characteristics of asbestosis and asbestos-related lung cancers. He also gave anecdotal testimony regarding two of his patients who exhibited different degrees of susceptibility to asbestosis, and he rendered his opinion that friable asbestos-containing ceiling materials are

unreasonably dangerous. USG made specific objections at trial, and also moved to strike Dr. Tuteur's opinion on the ultimate issue.

■ Dr. Tuteur's general testimony regarding the diseases caused by inhalation of asbestos was relevant to show that inhalation of asbestos could cause disease. This was a material issue in the case. The School District's theory was that USG's Audicote was defective and dangerous because it released asbestos fibers, which, if inhaled, could cause various lung diseases. Expert testimony regarding the nature, variety and seriousness of these diseases was likely to be helpful to the jury, and was therefore admissible. *Parlow v. Dan Hamm Drayage Co.*, 391 S.W.2d 315, 326 (Mo.1965); *Randolph v. USF & G Companies*, 626 S.W.2d 418, 421 (Mo.App.1981).

The testimony regarding varying levels of susceptibility to asbestos-related disease was also relevant and material. The jury, in determining whether the asbestos inhalation hazard posed by Audicote was unreasonable, was entitled to consider the heightened susceptibility of children to asbestos-related disease. Dr. Tuteur's testimony illustrating differing levels of susceptibility in two of his patients laid the foundation for his later opinion, to which USG did not object, that children are more susceptible to asbestos-related disease than adults.

Dr. Tuteur's opinion on the ultimate issue is likewise unobjectionable. It is not a valid objection to the introduction of expert testimony that it points to an ultimate issue in the case if the subject is such that the jurors are not likely to be conversant with it and the opinion would aid in their understanding. *Wessar v. John Chezik Motors, Inc.*, 623 S.W.2d 599, 602 (Mo.App.1981). The jury was not likely to be conversant with the dangers of friable asbestos-containing ceiling materials, and, since the issue of unreasonable danger was to be left to the jury without further definition, *Nesselrode*, 707 S.W.2d at 378, the opinion of an expert was likely to aid in their understanding. *See Siebern v. Missouri–Illi-*

*nois Tractor & Equipment Co.*, 711 S.W.2d 935, 938–40 (Mo.App.1986).

Because the testimony of Dr. Tuteur was admissible for other valid purposes, it was not subject to exclusion merely on the ground that it did not relate directly to the product Audicote. *Boehmer*, 412 S.W.2d at 110.

USG complains that testimony of Dr. Kaye Kilburn, concerning two studies he conducted in the Los Angeles area, should have been excluded for lack of foundation. The first study measured the incidence of asbestos-related disease in shipyard workers exposed directly to asbestos. This study also measured disease in the workers' family members, who were exposed to asbestos only through the workers' clothing brought into the household after having been worn on the job. The second study measured the incidence of asbestos-related disease in maintenance and custodial workers exposed to asbestos-containing products in the Los Angeles School District. USG contends that, because these studies involved dissimilar exposure levels, fiber types and circumstances of exposure, they were irrelevant to demonstrate any defect in Audicote or any danger arising out of its use.

The Kilburn studies were admissible for legitimate purposes other than to show directly that Audicote was unreasonably dangerous. The shipyard study showed that incidental, non-occupational exposures could cause disease. The school study showed that asbestos-containing building materials could present significant health threats. The school study was part of the basis for Dr. Kilburn's opinion as to the types of disease which would be caused by exposure to asbestos. It was also foundational for his opinion that asbestos in any site where it can be abraded and released into the air is dangerous. The studies were proper subjects of expert testimony in that they were likely to aid the jury's understanding of the dangers of exposure to asbestos. They were, therefore, relevant and admissible for a valid purpose and were not subject to exclusion merely be-

cause they did not involve exposures to Audicote. *Boehmer*, 412 S.W.2d at 110.

USG contends that the Kilburn studies must meet foundational requirements for experimental evidence set forth in *Blevins v. Cushman Motors*, 551 S.W.2d 602, 610 (Mo. banc 1977). The Kilburn studies, however, were not experiments conducted out of court for the purpose of re-creating the conditions in the Independence schools. The studies were conducted for the purpose of obtaining scientific knowledge. Because the studies are free from the taint of interest or bias that might accompany the usual experimental evidence, it is appropriate to give greater latitude when reviewing allegations of error in their admission. *See* 29 Am.Jur.2d Evidence § 819; McCormick on Evidence § 202 at 603–04 (3d ed.). The trial court's ruling on the Tuteur and Kilburn evidence was not error.

USG's next point, which contends that exclusion of "comparative risk assessment" testimony was error, has not been preserved for appellate review. Prior to trial, USG proposed to offer comparative risk evidence through the expert testimony of Dr. Kenneth Crump. The School District filed a motion in limine to preclude all testimony and demonstrative evidence concerning comparative risk assessment. Both parties filed suggestions in support of their positions on the motion. USG's memorandum described comparative risk assessment in general terms and advanced legal arguments in favor of admissibility on the issue of unreasonable danger. The School District argued that the proposed evidence was calculated to confuse the jury and would introduce collateral matters, thereby diverting attention from the central inquiry.

The motion was argued during pre-trial conference and was sustained on the grounds advanced by the School District. The judge indicated, however, that he would defer final judgment on the matter until Dr. Crump could be examined as to the exact nature of his testimony. The School District noted that, during the taking of his deposition, Dr. Crump had been unable to say what comparisons he planned

to make at trial. School District requested an opportunity for further discovery, noting that without advance knowledge of the comparisons Dr. Crump would make, the School District would have no effective means of cross-examining him.

USG did not produce Dr. Crump at trial, but instead made the following narrative offer of proof:

> We would like to offer evidence on the issue of comparative risk assessment. We believe that, as we argued in our pretrial, that this is a useful way to enable the jury to make some comparison between the risk attendant upon exposure to very small quantities of asbestos and other day-to-day things, and we think that's helpful for them to come to some reasonable conclusion about what an unreasonably dangerous or unreasonably hazardous product is, and we think it goes to the evidence of strict liability and we would like to offer evidence on that.

School District objected on the same grounds advanced in its motion in limine.

The court inquired, "This is the comparisons to peanut butter and diet soda?" USG replied:

> It's comparisons with other materials that people come into contact with on a day-to-day basis which may contain very small amounts of harmful material, and it gives the jury some basis to assess the extent or quantification of the risk involved in this case.

In order to present and preserve an offer of proof, the proper procedure is to propound questions to a witness who is present and who has taken the stand. *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 205 (Mo. banc 1983); *Dunkin v. Reagon*, 710 S.W.2d 498, 499 (Mo.App.1986). Although a narrative offer of proof may occasionally be found to be adequate (see cases collected in *Stapleton v. Griewe*, 602 S.W.2d at 813), it must be presented "with certainty and detail sufficient to demonstrate its quality as relevant, material and probative evidence." *Fletcher v. City of Independence*, 708 S.W.2d 158, 172 (Mo.App.1986). The offer must be

more than a mere statement of the conclusions of counsel. *Karashin,* 653 S.W.2d at 205; *Kinzel v. WestPark Investment Corp.,* 330 S.W.2d 792, 795–96 (Mo.1959). These requirements are not only to ensure that the trial court has a sound basis for ruling on admissibility, but also to ensure that the appellate court has an adequate record for review. *Karashin,* 653 S.W.2d at 205.

USG's offer of proof did not meet the general requirements. The offer was not in question and answer form, and it was not specific and definite enough to demonstrate the relevance, materiality or probative value of the proffered testimony. The testimony USG sought to introduce was to be of a highly technical nature. Whether any part of it would have been relevant or helpful to the jury cannot be determined without knowing exactly what comparisons Dr. Crump would have made.

Although there is a narrow exception to the general requirement for a formal offer of proof, the testimony of Dr. Crump was not within the exception. The exception applies where: 1) all parties and the trial court completely understand what the proffered testimony will be, 2) the objection is to a category of evidence rather than to specific testimony, and 3) the record reveals that the evidence would have been helpful to the offering party. *Frank v. Environmental Sanitation Management,* 687 S.W.2d 876, 883–84 (Mo. banc 1985); *State v. Northeast Building Co.,* 421 S.W.2d 297, 300–01 (Mo.1967). Where it is unclear what the excluded testimony would have been, the exception does not apply. *Hawkinson Tread Tire Co. v. Walker,* 715 S.W.2d 335, 337 (Mo.App.1986). In this case, plaintiff had been unable to discover the exact nature of Dr. Crump's testimony, and the trial court heard only the conclusory statements of counsel. The trial court had no sound basis for ruling on admissibility and the appellate court has no adequate record for review.

█ USG's fifth point alleges that the School District failed to make a submissible case because there is no evidence in the record that Audicote plaster was unreasonably dangerous. USG argues that the School District's failure to quantify the risk of harm to building occupants is fatal to the School District's case. Without a standard for measuring the degree of risk presented in the schools by Audicote, claims USG, the jury had no way to evaluate whether any danger posed by Audicote was unreasonable.

USG relies upon *Bennett v. Mallinckrodt, Inc.,* 698 S.W.2d 854 (Mo.App.1985), wherein the plaintiffs sought recovery on the theory that exposure to radiation, which increased their risk as candidates for cancer, was a present injury. The court found that the plaintiff's allegation of future damages, based upon mere mathematical probability of enhanced risk, could not be considered a reasonable certainty; the claim of injury based on the theory of increased risk of contracting cancer was therefore defective. Gypsum reasons by analogy that the need for quantification of future damages in *Bennett* requires equivalent quantification of enhanced risk in this case; if future damages must be based upon more than mere unquantified mathematical probabilities, then, so also should increased risk of harm from exposure to the product Audicote. USG reasons that lack of quantification of risk should be deemed fatal to the School District's case. In other words, USG contends that, in order to prove unreasonable danger, the School District must prove the level or threshold at which exposure to asbestos in Audicote actually becomes a health hazard.

*Bennett v. Mallinckrodt* and cases from other jurisdictions on which USG relies are distinguishable. There, the plaintiffs' actions are for future personal injuries. Such claims are not compensable in Missouri because damages based upon such mere probabilities "significantly undercompensate those who actually develop cancer and are a windfall to those who do not." *Bennett v. Mallinckrodt* at 866.

The School District, however, states a claim for present injury to its property. Although the claim of injury through contamination is related to the increased risk of future harm to building occupants, the

School District seeks recovery for present injury to its property, not for future personal injuries. There is no question here of remote and speculative future damages, as in *Bennett*. The School District incurred actual costs through the steps taken to abate the hazard posed by Audicote. The damages are fixed and ascertainable. The real question posed by USG is whether the jury should have been required to measure the degree of risk posed by Audicote against an external standard as a basis for its determination of whether Audicote was unreasonably dangerous.

The Missouri Supreme Court, in *Nesselrode*, 707 S.W.2d at 377–78, deliberately refrained from imposing upon the jury an external standard for determining whether a product is in an unreasonably dangerous (i.e., defective) condition. The court explicitly approved the practice of submitting the issue of unreasonable danger to the jury as an ultimate issue without further definition. The concept of unreasonable danger is given content by the jury's "applying their collective intelligence and experience to the broad evidentiary spectrum of facts and circumstances presented by the parties." *Id.* at 378.

In reviewing the submissibility of the School District's case, this court must assess the sufficiency of the evidence, which must be viewed in the light most favorable to the School District, and the School District must be given the benefit of all favorable inferences which may fairly be drawn from the evidence. The School District's evidence was ample to support a finding that Audicote created an enhanced risk to the health of building occupants. USG so concedes. Drs. Tuteur and Kilburn each testified that, if Audicote released asbestos fibers into the school environment, the children and personnel were subject to a definite hazard. Mr. Hubbard testified that Audicote had released asbestos into the school on prior occasions. Dr. Keyes, a specialist in air pollution analysis and control, testified that Audicote was friable, that is, that it could be powdered in the hands. Dr. Rohl, a consulting mineralogist/geologist, concurred and stated that a one-gram sample of Audicote would release millions of asbestos fibers upon being physically disturbed. Dr. Tuteur testified that children are particularly susceptible to asbestos-related diseases because of the longer latency period which follows exposure at an early age. For so long as the Audicote ceilings remained in place, they were subject to continuing damage from foreseeable vandalism, invasion by cleaning implements used by maintenance workers, and dropouts caused by leaking roofs.

The evidence was sufficient to support the conclusion that the presence of asbestos-laden Audicote in the School District's buildings increased the risk of serious harm to the building occupants through contamination of the buildings and contents. The evidence shows that the danger of contamination could not be adequately controlled by encapsulation or any other reasonable maintenance program. Whether Audicote was dangerously defective was a factual issue for the jury's determination. *Id.* A jury composed of reasonable men and women, therefore, "applying their collective intelligence and experience to the broad evidentiary spectrum of facts and circumstances presented," *Id.* at 378, was free to infer and conclude upon the evidence adduced by the School District that Audicote contained asbestos, which could, if released, cause a definite health hazard, that Audicote did release asbestos into the School District's buildings, and that it was, therefore, unreasonably dangerous.

 USG's final point alleges that the School District failed to prove tortious injury to property other than the defective product itself, and that its cause of action, if any, sounded in warranty for pure economic loss rather than in tort. The School District correctly observes that USG's sixth point fails to comply with Rule 84.04(d) which requires a statement of wherein and why the trial court erred. Considering the fifth and sixth points together, however, USG's essential contentions are clearly ascertainable. The School District responded to USG's final point with obvious understanding of USG's contentions. Because the issue is submissibility, it should be reviewed. *Charles F. Curry & Company v. Hedrick*, 378 S.W.2d at 531.

Missouri courts have not previously confronted the special problems of contain-

ment or removal of products containing asbestos within schools. In dealing with school boards' claims against asbestos manufacturers for the recovery of abatement costs, most courts have permitted recovery in tort for damage to the defective product itself; that is, for the cost of replacing the asbestos. *See* e.g., *Adams–Arapahoe School District No. 28–J v. Celotex Corp.*, 637 F.Supp. 1207 (D.Colo.1986); *City of Manchester v. National Gypsum Company*, 637 F.Supp. 646 (D.R.I.1986); *Town of Hooksett School District v. W.R. Grace & Co.*, 617 F.Supp. 126 (D.N.H. 1984); *Cinnaminson Township Board of Education v. U.S. Gypsum Co.*, 552 F.Supp. 855 (D.N.J.1982). In arguing the issue of whether a plaintiff in Missouri can recover damages in tort or only in a contract action for breach of warranty, USG invites this court to examine two leading cases: *Sharp Brothers v. American Hoist and Derrick Company*, 703 S.W.2d 901, 902 (Mo. banc 1986), and *East River Steamship Corporation v. Transamerica Delaval*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

In *Sharp Brothers*, the defendant sold a crane, the counterweight of which broke from its place and crushed the crane's cab. There was neither personal injury nor other damage. The Missouri Supreme Court, as a matter of policy, denied recovery on a theory of strict liability in tort where the only damage is to the product sold. *Sharp Brothers*, 703 S.W.2d at 903.

In *East River Steamship Corporation*, the United States Supreme Court held in admiralty that damage to the ship's turbine caused by a defect in the design of the turbine was an economic loss recoverable only in warranty. There was neither personal injury nor other damage. Justice Blackmun stated the issue: "[W]e must decide whether a cause of action in tort is stated when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." 106 S.Ct. at 2296. The court held that a manufacturer in a commercial relationship has no duty in tort to prevent a product from injuring itself. *Id.* at 2302. The court, however, specifical-

ly did not reach the issue of whether a tort cause of action can ever be stated in admiralty when the only damages are economic. *Id.* at 2302 n. 6. *East River* provides that damage to a product itself is most naturally understood as a warranty claim. This is so because "the tort concern with safety is reduced when an injury is only to the product itself." *Id.* at 2302. In contrast to personal injury or property damage situations, which commonly generate costs the consumer is not prepared to meet, losses incurred when a product injures only itself are properly characterized as "insufficient product value," and are adequately addressed by warranty law. *Id.* at 2303. The court noted that economic loss is best characterized as the failure of the purchaser to receive the benefit of the bargain. *Id.* at 2302 n. 9.

USG contends that under the rule in *Sharp Brothers* and *East River* the School District is precluded from tort recovery for its damages resulting from the installation of Audicote. Each of these decisions, however, is largely inapposite to the situation presented by the School District. In both *Sharp Brothers* and *East River*, the defective product injured only itself.

The School District, however, did claim damage to property other than the Audicote ceilings. It claimed that Audicote released asbestos, contaminating the school buildings and their contents, thereby endangering the lives and health of building occupants. The verb "contaminate" is defined as "an action by something external to an object which by entering into or by coming in contact with the object destroys its purity." Webster's Third New International Dictionary, Unabridged (1966). The School District's evidence of contamination includes the following: Audicote was a textured acoustical finish coat which was sprayed or trowelled over a plaster base coat; it contained 13 to 17 percent asbestos; Audicote released asbestos fibers spontaneously through dusting; on more than one occasion the schools sustained ceiling dropouts from water damage, releasing large numbers of fibers; the routine scraping and impact damage done by students could release many millions of fibers; the fibers released were in the

building environment, the air, curtains, rugs, and furnishings. As a part of its actual damages, the School District claimed an amount in excess of $100,000 for costs of replacement of a portion of the buildings' contents.

The School District does not allege that Audicote failed to perform its function as plaster but that it contaminated the school buildings and posed a serious risk of personal injury to those in contact with it. The risk here is not the type of risk that is normally allocated between the parties to a contract by agreement such as that contemplated by *East River*. The product in this case did not require replacement or repair in order to function as it was intended. The School District's pecuniary loss does not arise from deterioration, internal breakage, or any other sort of insufficient product value. The School District is not claiming damages because of injury to the product itself. There is no claim for loss of profit arising from a defect in the performance of the product. Rather, the issue of damages arises from replacement of a product and other items of personal property because of a grave personal safety risk caused by contamination of buildings and their contents. Moreover, *East River* specifically did not reach the issue of whether a tort cause of action can ever be stated in admiralty when the only damages are economic. *East River*, 106 S.Ct. at 2302, n. 6. Here, the product would not be defective but for the fact that it caused a risk of injury to others. The tort lies in the exposure of risk to the students and other building occupants by an unreasonably dangerous product.

As a matter of policy, Missouri law permits a finding of liability under Restatement (Second) of Torts § 402A (1963) when a dangerously defective product causes personal injury. *Sharp Brothers* at 902. In *Keener v. Dayton Electric Mfg. Co.*, 445 S.W.2d 362 (Mo.1969), the court announced that the rule of strict liability was appropriate to insure that the cost of injuries from defective products be borne by manufacturers, not by the injured persons. It is reasonable that Missouri should extend tort liability to a manufacturer whose product threatens a substantial and unreasonable risk of harm by releasing toxic substances into the environment, thereby causing damage to the property owner who has placed the harmful product in his building. The School District should not be prevented from asserting an action in strict liability simply because none of the school's occupants has yet developed disease. Asbestosis, other asbestos-related lung diseases, and cancer may not develop until decades after exposure. A plaintiff such as the School District should not be forced to wait until disease manifests itself before being permitted to maintain an action in tort against the manufacturer whose product increases the risk of deadly disease or serious impairment of health by releasing a harmful substance into the environment. *See City of Greenville v. W.R. Grace & Company*, 827 F.2d 975, 978 (4th Cir.1987).

Review of relevant authority supports the School District's ability to assert a claim for strict liability against USG under the facts of this case.

Judgment affirmed.

All concur.